Olivette **COFFEY**, Jr., et al., Plaintiffs,

v.

Dwight **BRADDY** et al., Defendants.
No. 71–44–Civ–J.

United States District Court,
M. D. Florida,
Jacksonville Division.

Aug. 12, 1971.

As Amended Sept. 29, 1971.

William J. Sheppard of Sheppard, Fletcher, Hand & Adams, Jacksonville, Fla., for plaintiffs.

William Lee Allen, Asst. Gen. Counsel, for the City of Jacksonville, Jacksonville, Fla., for defendants.

## ORDER

CHARLES R. SCOTT, District Judge.

The plaintiffs have moved this Court for various injunctive orders requiring the defendants to implement certain hiring practices and procedures with respect to the position of Fire Private within the Consolidated City of Jacksonville Fire Department.

The parties have heretofore consented to the submission by defendants of a consolidated plan pointing to resolution of the issues raised in this cause. The defendants have submitted said plan and upon consideration of said plan and the arguments of counsel, it is the Order, Judgment and Decree of this Court:

1. That on or before August 15, 1971, defendants will conduct or cause to be conducted a job analysis (task analysis) to determine the physical and mental skills, abilities, and other qualifica-

tions required for successful job performance in the position of Fire Private in the City of Jacksonville Fire Department, and indicated changes will be made in existing qualification requirements as stated in the class specifications. Defendants shall file with the Court and serve on plaintiffs' attorney a copy of the revised qualification requirements.

2. That on or before August 15, 1971, and based upon the revised qualification requirements referred to in paragraph 1 hereof, defendants will develop and validate, or cause to be developed and validated, a suitable battery of tests to measure the physical and mental skills, abilities, and other qualifications required for successful performance in the position of Fire Private in the City of Jacksonville Fire Department. Said battery of tests will include, but not be limited to, written tests and physical strength and agility tests. Said written tests will be designed to eliminate any possible cultural bias. Defendants will file with the Court and serve on plaintiffs' attorney a notification that the battery of tests has been developed when same is accomplished.

3. That defendants will develop the criteria of job performance for the position of Fire Private to the point of optimum usefulness in validation of the battery of tests to be developed pursuant to paragraph 2 hereof and other employment methods utilized in filling the position of Fire Private in the City of Jacksonville Fire Department. Defendants shall cause the battery of tests to be developed to be validated as to logical or content validity.

As a long-range objective, which should take approximately two years, defendants shall cause the battery of tests developed pursuant to paragraph 2 hereof to be validated to determine and insure the predictive validity of said tests. Reports as to the progress being made as to predictive validity of said tests will be made every six months to the Court, with a copy served on plaintiffs' attorney, commencing six months after August 15, 1971; however, in recognition of the time factors involved in developing statistics for predictive validity studies, the first six months report will consist only of the long-range plans for developing predictive validity.

4. That defendants shall conduct pre-test training and/or counseling on the employment methods (particularly, written tests) to be utilized so as to familiarize candidates for the position of Fire Private with the general nature of the testing devices used (such as content, form, and the answer sheet, if any).

5. That defendants will intensify recruitment efforts in order to attract qualified and interested black as well as white applicants for the position of Fire Private. Defendants will make optimum use of all appropriate communication media to reach the black community, will increase recruiting visits, and utilize black recruiters. It will be the responsibility of the defendant Personnel Manager and Fire Chief to carry out the foregoing.

6. That defendants will conduct examinations for the position of Fire Private at two or more locations in the City of Jacksonville for the convenience of all applicants—black as well as white—with at least one examination location to be located in the sections of Jacksonville occupied predominantly by black citizens.

7. That defendants will, effective July 1, 1971, take whatever action is necessary to hire fifty (50%) percent black and fifty (50%) percent white individuals to fill funded positions of Fire Private from the appropriate eligible list until the ratio in the Fire Department of black firemen to white firemen equals the ratio of black citizens to white citizens in the City of Jacksonville, and that such ratio shall be applicable to each such eligible list until no black candidates or white candidates remain thereon. Appointments from such eligible lists shall be governed by the "rule of five (5)" provided in current civil service rules consistent with the ra-

tio set forth in the preceding sentence, provided, however, parties to this cause may at any time for good cause move the Court to modify the hiring procedures herein.

8. That defendants shall conduct an open entrance examination utilizing the battery of tests developed pursuant to paragraph 2 hereof and validated pursuant to paragraph 3 hereof on or before September 30, 1971.

9. That defendants shall file with the Court and serve on plaintiffs' attorney a copy of all eligible lists established hereafter until the provisions of paragraph 7 have been complied with. Said lists will have all black candidates designated as such by an asterisk.

Incorporated in the six months reports referred to in paragraph 3 hereof will be a list of all Fire Privates hired during the prior six month period with those black Fire Privates hired being designated by an asterisk.

10. That the Court shall maintain continuing jurisdiction of this action.

## ON MOTION TO SUSPEND

The issue before the Court is whether a state statute, a city charter provision and two civil service board regulations should temporarily be suspended in order to effectuate an earlier order of the Court which directed the City to employ one black fireman for every white fireman hired.

In early 1971, plaintiffs, prospective firemen, filed a class action civil rights complaint and application for preliminary injunction alleging racially prejudicial practices in hiring firemen by the City of Jacksonville, Florida. Thereafter defendants Jacksonville Civil Service Board, Fire Chief and Chief of Personnel filed an answer to the complaint. After hearing on plaintiffs' application for preliminary injunction was held, the Court entered an order, to which all parties consented, allowing defendants 45 days to file a consolidated plan for resolving the issues of the case.

Defendants' consolidated proposed plan for resolution of the issues included the following provision:

7. Effective July 1, 1971, the defendants will take whatever action is necessary to hire 50% black and 50% white to fill funded positions of Fire Private from the appropriate eligible list until the ratio in the Fire Division of black to white equals the ratio of black to white in the City, and that such ratio shall be applicable to each such eligible list until no blacks or whites will remain thereon.

On August 12, 1971, the Court, by order, adopted the proposed plan of defendants, including the hiring provisions quoted above.

In October 1971, a class action was instituted in the Circuit Court of Duval County, Florida, by Donald Ellis, as a member of the Jacksonville Fire Department, against the same defendants as are in the instant case. Ellis v. Braddy, Civil No. 71–9412 (Fla.4th Cir.Ct.1973). The state circuit court granted defendants' motions to dismiss that complaint.

On appeal from the order of the state circuit court the Florida First District Court of Appeal directed the circuit court to reinstate the complaint.

After trial, the circuit court entered an injunction which included the following:

2. That the Defendants, . . . are hereby enjoined and restrained from preparing and keeping separate lists of black applicants and white applicants for the purpose of certifying and hiring, and from certifying and hiring any such applicants, for fire private in the Consolidated City of Jacksonville, contrary to [Civil Service Rule 6.2, Civil Service Rule 7.2, Charter of City of Jacksonville, Article 19, Section 19.03, Section 112.-042(1), Florida Statutes [F.S.A]], and shall forthwith and permanently cease and desist from hiring any applicant for fire private, in the Consoli-

dated City of Jacksonville, Florida, with a lower final rating, merit or qualification than another available applicant, on the basis of race, or color, contrary to said Civil Service Rules, Section 19.03 of Article 19 of the City Charter of Jacksonville, and Florida Statutes, Section 112.042(1) [F.S.A.].

Plaintiffs herein have now moved to amend the Court's order of August 12, 1971, to temporarily suspend Florida Statutes § 112.042(1), F.S.A.[1]; § 19.03, Article 19 Charter Laws of the Consolidated City of Jacksonville (1970)[2]; and Rules 6.2 and 7.2 Consolidated Civil Service Board of the City of Jacksonville, Rules and Regulations (1970).[3] At

1. Florida Statutes § 112.042(1), F.S.A. reads as follows:

(1) It shall be against the public policy of this state for the governing body of any county or municipal agency, board, commission, department, or office, solely because of the race, color, sex, religious creed, or national origin of any individual, to refuse to hire or employ, to bar, or to discharge from employment such individuals or to otherwise discriminate against such individuals with respect to compensation, hire, tenure, terms, conditions, or privileges of employment, if the individual is the most competent and able to perform the services required.

2. Section 19.03, Article 19; *Charter Laws of the Consolidated Government of the City of Jacksonville, reads as follows:*

Section 19.03. Employment Policy. The elected civil service board shall enforce qualifications and certify personnel for employment, promotion, demotion, transferral, dismissal and compensation solely on the basis of merit and qualification, without regard to race, color, religion, political affiliation, sex, national origin or any other circumstances other than merit and qualification. The civil service board of the consolidated government shall ensure the enforcement of this employment policy.

3. Rule 6.2, *Consolidated Civil Service Board of the City of Jacksonville, Rules and Regulations,* reads as follows:

ELIGIBLE LISTS

(a) After each examination, the Civil Service Board shall establish a list of persons with passing grades. The names of individuals shall be placed on the eligible list in the order of their final ratings, starting with the highest final rating. The eligible list shall be effective when approved by the Civil Service Board, providing there has been no appeal prior to the expiration of the appeal period.

(b) Continuous Recruitment List—After each examination administered under continuous recruitment the Personnel Department shall, on a weekly basis, submit the names of those applicants who achieved passing grades to the Board for approval and inclusion of such names on a "Continuous Recruitment List." The names shall be placed

on the list in chronological order in such manner that the name which has been on the list for the longest period of time shall always appear as the first name thereon. Any name appearing on said list continuously for one year shall be removed therefrom. Where one or more persons achieve passing status during one calendar day, the person attaining the highest score shall be placed first.

Rule 7.2, *Consolidated Civil Service Board of the City of Jacksonville, Rules and Regulations,* reads as follows:

CERTIFICATION OF ELIGIBLES

(a) Entrance Lists: Upon receipt of a requisition, the Manager shall certify and submit in writing to the appointing authority the names of available persons eligible for the appointment. If one position is involved, he shall certify and submit from the list for that class of positions the names of all persons who are in the highest five (5) positions on the entrance eligible list. If more than one vacancy occurs in the same class of position under the same appointing authority, the Manager shall certify two (2) names for each additional vacancy, the highest score first. If there are less than five (5) names on the list, selection shall continue to be made until there are less than three (3) names remaining. If the list established as a result of the open-competitive examination for a specific class of positions is exhausted, the Manager may certify and submit names in accordance with the above procedure from a list established for a related class of positions at the same pay grade. The Manager shall certify the entire list to fill one or more vacancies from lists governed by Rule 6.9. The appointing authority may select from any name of said list. The life of a certification during which action may be taken shall be thirty (30) calendar days from the date of issue and any appointment made from such certification during that time shall not be subject to any change in the condition of the list taking place during that period, unless so ordered by the Board.

(b) For positions which, in the Civil Service Board approved table of organization, are immediately below in rank of that of an appointed or elected official, or for positions which serve as immediate assistants to ap-

the hearing on plaintiffs' motion, counsel for defendants orally moved the Court to reconsider the prior order of the Court in the light of the ruling from the state circuit court.

The Court will not reconsider the merits of the case or the propriety of the order of August 12, 1971, at this late date. The legal authority for that order is considerable, Swann v. Charlotte-Mecklenburg Bd. of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1970); United States v. Louisiana, 225 F.Supp. 353 (E.D.La.1963), aff'd 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709; Morrow v. Crisler, 479 F.2d 960 (5th Cir. 1973); Local 53 of International Assn. of Heat & Frost Insulators & Asbestos Workers v. Vogler, 407 F.2d 1047 (5th Cir. 1969); United States v. Georgia Power Co., 474 F.2d 906 (5th Cir. 1973); Carter v. Gallagher, 452 F.2d 315 (8th Cir. 1971); United States v. Jacksonville Terminal Co., 451 F.2d 418 (5th Cir. 1971); Castro v. Beecher, 365 F.Supp. 655 (D.Mass.1973); Bridgeport Guardians, Inc. v. Members of Bridgeport Civil Service Commission, 354 F.Supp. 778 (D. Conn.1973); and the justice of it is apparent.

■ The Court has long recognized that in cases of employment discrimination it is often necessary to order affirmative relief in order to insure that the effects of the past discrimination are overcome. This well established concept of affirmative relief, commonly applied in all areas of racial discrimination is not, as defendants claim, creating some new form of invidious discrimina-

tion in favor of blacks. Morrow v. Crisler, 479 F.2d 960 (5th Cir. 1973).

This Court acquired jurisdiction of the persons and subject matter of this controversy long before the parallel case was filed in the state circuit court and has retained jurisdiction in the order of August 12, 1971.

> Where a state court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other, until its duty is fully performed and the jurisdiction invoked is exhausted; and this rule applies alike in both civil and criminal cases.

Taylor v. Taintor, 83 U.S. (16 Wall.) 366, 370, 21 L.Ed. 287 (1873).

The question of whether a state court or federal court must refrain from taking jurisdiction of a cause already properly before the other forum has recently been considered by two different panels of the United States Court of Appeals for the Fifth Circuit. In both cases the Court found that when either a state or federal court took jurisdiction of the controversy it was to the exclusion of the jurisdiction of the other court. Polk v. State Bar of Texas, 480 F.2d 998 (5th Cir. 1973); Duke v. State of Texas, 477 F.2d 244 (5th Cir. 1973).

■ Therefore, when this Court first took jurisdiction of the instant case, the state circuit court was precluded from taking jurisdiction over the same case in state court.

The state circuit court realized the applicability of this rule of law when the first complaint was dismissed in that

---

pointed or elected officials, the top three (3) names on the promotional eligible list shall be certified to the appointing authority; provided that there are three names on said promotional eligible list, (Rule 5.19 shall govern in cases where there are less than three eligibles); provided, however, such rule shall only be applicable to one position in each division and provided further that such position has been so designated and approved by the Civil Service Board prior to the request for the promotional examination. For all other positions, the top name on the promotional eligible list shall be

certified to the appointing authority, except where the eligible list is based on a city-wide promotional examination, top three (3) names on said list shall be certified to the Appointing Authority and the Appointing Authority may select any one of the three for the vacant position. Waivers of employees' rights whose names appear on this list shall only be valid where such waiver has been signed by the affected employee in the presence of two witnesses, which such witnesses have inscribed on such waiver their current mailing address.

court. In the order of dismissal it was held, among other matters, as follows:

1. That the Defendants herein and the subject matter are the same as those contained in Case No. 71–44–Civ–J in the United States District Court, Middle District of Florida, Jacksonville Division, being styled Olivette Coffey, Jr., et al. v. Dwight Braddy, et al.

2. That this Court and that of the United States District Court for the Middle District of Florida are courts of concurrent jurisdiction, both having jurisdiction of the subject matter, and the United States District Court had assumed prior jurisdiction of the matters contained in this cause, and the Court that first acquired jurisdiction is entitled to retain jurisdiction.

4. That in \* \* \* \* paragraph 10 of the aforesaid order of the United States District Court dated August 12, 1971, it was provided 'that the Court shall maintain continuing jurisdiction of this action'.

The Florida First District Court of Appeal reinstated the state complaint on the theory that the state statute, city charter provision and civil service board regulations, which each prohibits racially discriminatory hiring practices, were still effective after this Court's order of August 12, 1971. The state court of appeal apparently believed that a quota which required that as many black as white firemen be hired violated the statute, charter provision and civil service regulations in question.

Although the August 12, 1971, order required a racially balanced hiring quota, it did not explicitly suspend the applicability of the statute, charter provision or civil service regulations. Nevertheless, such a temporary suspension of the effectiveness of these provisions as they apply to firemen in this case was implicit in the order.

It was apparent at the time of the entry of the order in August 1971, that such order was in conflict with the aforesaid statute, charter provision and civil service board rule. Unless the Court now specifically suspends the application of these three provisions of state law, the order of August 12, 1971, will have no practical effect because defendants will not know whether to follow this Court's 1971 order, or to follow the order of the state circuit court.

■ It cannot be gainsaid that remedies to overcome the effects of past discrimination may suspend valid state laws. Louisiana v. United States, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 (1964); United States v. Mississippi, 339 F.2d 679 (5th Cir. 1964); United States v. Duke, 332 F.2d 759 (5th Cir. 1963); Carter v. Gallagher, 452 F.2d 315 (8th Cir. 1971).

■ The Court did not expressly suspend the state statute, charter provision and civil service regulations in the original order because it always seeks to maintain the delicate balance between state and federal courts implicit in traditional concepts of comity and federalism. Nevertheless, these were implicitly suspended by that earlier order and now must be expressly suspended in order to maintain the integrity and vitality of that earlier order.

Therefore, it is

Ordered:

For the purposes of this cause only, Florida Statutes § 112.042(1), F.S.A.; § 19.03, Article 19, Charter Laws of the Consolidated Government of the City of Jacksonville (1970); Rules 6.2 and 7.-2, Consolidated Civil Service Board of the City of Jacksonville, Rules and Regulations (1970), are hereby temporarily suspended in their application *nunc pro tunc* to August 12, 1971. Such suspension shall remain in effect only so long as is necessary in order to effectuate this Court's order of August 12, 1971. Nothing in this order shall be construed so as to alter, modify, limit or constrict the hiring provisions of the order of August 12, 1971, and that order remains in full force and effect.

## ON PETITION FOR INJUNCTIVE RELIEF

This cause came on for hearing on November 28, 1973, before this Court with regard to defendants'[1] petition for injunctive relief, filed herein November 16, 1973, and the plaintiffs' motion for an appropriate order pursuant to 28 U.S.C. § 2283, filed herein November 27, 1973.

The essential facts herein, which are in part set forth in greater detail in this Court's order of July 19, 1973, are as follows: On January 26, 1971, plaintiffs, prospective black firemen, filed a class action civil rights complaint and application for preliminary injunction alleging racially discriminatory practices in hiring firemen by the City of Jacksonville, Florida. Thereafter, defendants Jacksonville Civil Service Board, Fire Chief and Chief of Personnel filed an answer to the complaint. After a hearing was held on plaintiffs' application for a preliminary injunction, this Court entered an order, to which all parties consented, allowing the defendants 45 days to file a consolidated plan for resolving the issue of the case. Defendants' consolidated proposed plan provided in part for the hiring of 50% black and 50% white eligible applicants until the ratio in the Fire Division of black to white equals the ratio of black to white in the City. On August 12, 1971, this Court, by its order, adopted and approved the defendants' proposed plan, including the hiring provision alluded to above and retained jurisdiction to assure proper implementation.

In October 1971 a class action was instituted in the Circuit Court of Duval County, Florida, by Donald Ellis, as a member of the Jacksonville Fire Division, against the same defendants as are in the instant case. Ellis v. Braddy, Civil No. 71–9412 (Fla. 4th Cir.Ct. 1973). The state circuit court granted defendants' motions to dismiss the complaint. On appeal, however, the First District Court of Appeal directed the circuit court to reinstate the complaint. Pursuant to the order of the state appellate court, the state circuit court entered an injunction which was diametrically opposed to this Court's order, in that hiring of firemen was to be effected on a strictly "color-blind" basis rather than so as to erase the effects of past discrimination which was the purpose of this Court's consent order.

On Motion of plaintiffs, this Court, by its order of July 19, 1973, amended its original order of August 12, 1971, so as to suspend expressly, *nunc pro tunc* to the date of the original order, the applicable state statute, charter provision and civil service regulations which formed the basis for the state court injunction. Such suspension was to remain in effect only so long as was necessary in order to effectuate this Court's order of August 12, 1971.

On July 26, 1973, defendants filed a motion with the First District Court of Appeal of Florida that the state case be remanded to the trial court for reconsideration and redetermination in the light of this Court's order of July 19, 1973. *See* General Capital Corporation v. Tel Service Co., 183 So.2d 1 (Fla.App.1966), and Florida East Coast Railway Company v. Rouse, 194 So.2d 260 (Fla.1967). This motion was, however, denied on August 28, 1973.

On October 16, 1973, defendants filed with the state appellate court a motion for advancement of the cause. On Oc-

---

[1]. By subsequent amendment to the petition for injunctive relief, filed herein November 21, 1973, the following parties withdrew their support for the petition and advocated that this Court reconsider its original order of August 12, 1971: Dwight Braddy, J. C. Dekle, William Hallowes, Warren E. Thomas, Boyd Jolly, Clarence J. Suggs, Jr., and Roger West, each in his capacity as a member of the Civil Service Board of the City of Jacksonville, Florida. This Court will not reconsider the merits of the original order at this late date, especially in view of the fact that the order was in the nature of a consent decree.

tober 22, 1973, the motion for advancement was granted. However, oral argument on defendants' appeal was deferred until February 21, 1974.

The reason for defendants' motion for advancement of the cause in the state appellate court and also for their petition in this Court is reflected in the affidavit of W. E. Smith, Fire Chief of the City of Jacksonville, which was attached to defendants' petition for injunctive relief and which was introduced into evidence at the hearing on the petition on November 28, 1973. This affidavit discloses that at the present time there exist 14 vacancies in the ranks of firemen in the Jacksonville Fire Division. In addition, 20 new men are needed to be employed in order to comprise the next 11 weeks training class, which is scheduled to commence on December 1, 1973. At the hearing on November 28, 1973, the Director of Public Safety testified that the Jacksonville Fire Division was operating at a budget level approximately 38% below the national average and that 75 new recruits were needed within the next 12 months in order to provide minimal fire protection for the City of Jacksonville. He also testified that it was imperative that the December first training class be commenced as scheduled in order to relieve, to at least a certain extent, the acute shortage of firemen. It is clear, therefore, that the City of Jacksonville is in quite a dilemma. The defendants are confronted with two choices: (1) either awaiting the decision of the state appellate court before hiring the much-needed recruits; or (2) commencing the December first class as scheduled. This latter choice would, in turn, involve two choices: (1) either complying with the state court injunction and thus being in contempt of this Court's orders of August 12, 1971, and July 19, 1973; or (2) complying with this Court's orders and thus being in contempt of the state court injunction.

■ This state of facts presents a mandate that this Court must, once again, act in order to enforce its prior orders. That this Court has authority to do so has already been established in the order of July 19, 1973. However, for the sake of emphasis, the applicable law will again be stated. In the early Supreme Court of the United States case of Taylor v. Taintor, 83 U.S. (16 Wall.) 366, 21 L.Ed. 287 (1873), it was held:

> Where a state court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other, until its duty is fully performed and the jurisdiction invoked is exhausted and this rule applies alike in both civil and criminal cases. 83 U.S. at 370.

This well-established principle was applied in two recent Fifth Circuit cases before two different panels. Polk v. State Bar of Texas, 480 F.2d 998 (5th Cir. 1973); Duke v. State of Texas, 477 F.2d 244 (5th Cir. 1973). As pointed out previously in the order of July 19, 1973, this Court acquired jurisdiction of the persons and subject matter of this controversy long before the parallel case was filed in the state circuit court and has retained jurisdiction in the order of August 12, 1971, in order to insure proper implementation of the plan. Therefore, under the law enunciated above, when this Court first acquired jurisdiction of the case *sub judice*, the state circuit court was thereby precluded from exercising jurisdiction over the same controversy until this Court's jurisdiction was exhausted. Further, the Courts of the United States are empowered by Congress and, moreover, have the inherent power to enter such orders as may be necessary to effectuate their judgments, decrees and orders and to prevent interference with, and obstruction to, their implementation.

■ Having thus decided to act in aid of its jurisdiction, this Court hereby concludes that the wisest course of action is to enjoin Don Ellis, any attorney representing him, or any person or persons acting independently or in concert

with them, from applying for sanctions against defendants herein for failure to comply with the state court injunction or from otherwise interfering in any manner with compliance by defendants with this Court's orders. *See* Mims v. Duval County School Board, 338 F.Supp. 1208 (M.D.Fla.1971), and United States v. Hall, 472 F.2d 261 (5th Cir. 1972).[2] This Court specifically rejects at this time the plaintiffs' suggested alternative of staying the state court proceedings *themselves* pursuant to 28 U.S.C. § 2283 while there is pending an appeal in the state appellate court in the state court case. This rejection should, in no way, be construed as an intimation as to the merits of a future request for this type of relief if such an alternative becomes necessary.

Therefore, it is

Ordered:

1. Defendants' petition for injunctive relief, filed herein November 16, 1973, is hereby granted to the extent stated above.

2. Plaintiffs' motion for an appropriate order pursuant to 28 U.S.C. § 2283, filed herein November 27, 1973, is hereby denied, without prejudice.

3. Don Ellis, any attorney representing him, or any persons or persons acting independently or in concert with them, are hereby enjoined from applying for any sanctions against defendants herein for failure to comply with the injunction entered in the case of Ellis v. Braddy, Civil No. 71–9412 (Fla. 4th Cir.Ct. 1973), by the Circuit Court in and for Duval County, Florida (Sam Goodfriend, Circuit Judge).

4. Don Ellis, any attorney representing him, or any person or persons acting independently or in concert with them, are hereby further enjoined from interfering *in any manner* with the compliance by defendants herein with the order of this Court dated August 12, 1971, as amended July 19, 1973, (*nunc pro tunc*).

5. The United States Marshal, or his authorized representative, is directed to serve copies of this order and injunction upon the following persons:

   (a) Mr. Donald G. Ellis
   2507 Congaree Drive West
   Jacksonville, Florida

   (b) Lacy Mahon, Esquire
   Attorney-at-Law
   77 Washington Street
   Jacksonville, Florida, 32202

6. A copy of this order shall be mailed to the Honorable Sam Goodfriend, Judge of the Circuit Court in and for Duval County, Florida, Duval County Court House, Jacksonville, Florida, 32202.

7. Anyone having notice of this order who violates any of the terms thereof shall be subject to arrest, prosecution and punishment by imprisonment or fine, or both, for criminal contempt under the laws of the United States of America. Alternatively, such person may be ordered to show cause why he should not be held in civil contempt, and subjected to remedial orders of this Court which may include, among other provisions, imprisonment or fine, or both.

---

**2.** *Mims* involved an injunction which sought to enjoin parties not before the Court. *Mims* was, in effect, affirmed in the *Hall* case which was a direct appeal of the criminal contempt conviction for violation of the *Mims* injunction. Therefore, by virtue of this authority, this Court is empowered to enjoin parties not before this Court but who have notice of the proceedings and who are identified with parties before the Court.