TOWN OF MILTON & others *vs.* CIVIL SERVICE
COMMISSION & another.

Suffolk.     May 6, 1974. — June 5, 1974.

Present: TAURO, C.J., REARDON, HENNESSEY, & KAPLAN, JJ.

*Civil Service.    Constitutional Law,* Equal protection of laws, Public
     employment, Due process of law.   *Public Employment.    Police.*
     *Equity Pleading and Practice,* Appeal.

St. 1972, c. 226, amending G. L. c. 31, § 48A, and giving certain
     preferences in place on Civil Service eligible lists for municipal police
     to applicants who have lived in the municipalities for one year over
     applicants who have not does not put such a burden on the latter
     applicants' "right to travel" as to require justification of a compelling
     State interest in order to be constitutional under the equal protection
     clause of the Fourteenth Amendment of the Federal Constitution
     [370-374]; c. 226 bears a reasonable relation to providing good police
     service to the municipalities and preserving public safety and order
     and does not establish an irrational and arbitrary classification in
     violation of the equal protection clause [374-377]; c. 266 meets
     the requirement of "substantial relationship" to job performance
     [376-377]; c. 226 does not create a permanent "irrebuttable presump-
     tion" in violation of the due process clause of the Fourteenth
     Amendment [377-378].
Possible conflict between a Massachusetts statute and a decree of the
     United States District Court, not having been raised at trial in the
     Superior Court in a suit in equity, could not be raised for the first time
     in this court on appeal.   [378-379]

BILL IN EQUITY filed in the Superior Court on October 23,
1973.

The suit was heard by *Good,* J.

*Lawrence T. Bench,* Assistant Attorney General (*Walter
H. Mayo, III,* Assistant Attorney General, with him) for
Civil Service Commission & another.

*Robert D. O'Leary,* Town Counsel, for the town of Milton

(*Lawrence J. Markell*, Assistant Town Counsel, for the town of Marblehead, with him).

REARDON, J. The plaintiffs, twenty-seven cities and towns, brought this bill in equity seeking declaratory and injunctive relief against the Civil Service Commission and the director of civil service of the Commonwealth (director). The bill sought to compel the defendants to comply with certain provisions of St. 1972, c. 226 (c. 226), amending G. L. c. 31, § 48A. After a trial in the Superior Court the judge entered a final decree declaring c. 226 constitutional in its entirety and ordering compliance therewith. The defendants appeal from this decree. The judge made findings of fact, rulings and an order, and the evidence is reported.

The only issue presented in this appeal is the constitutionality of c. 226 which is reproduced in the margin.[1] The statute requires the director to give higher placement to certain persons in preparing lists of eligible applicants for appointment to the police forces of cities or towns. It calls for placing the name of any applicant who has resided

---

[1] "AN ACT FURTHER REGULATING THE RESIDENCY REQUIRE-MENTS FOR APPOINTMENT OF POLICE OFFICERS UNDER THE CIVIL SERVICE LAW.

"Be it enacted, etc., as follows:

"Section 48A of chapter 31 of the General laws, as most recently amended by chapter 16 of the acts of 1969, is hereby further amended by striking out the first sentence and inserting in place thereof the following two sentences: — No applicant for appointment to the police force of a city or town shall be required by rule, or otherwise, to be a resident of such city or town at the time of filing his application for examination for such appointment; provided, however, that notwithstanding the provisions of any general or special law to the contrary, any person who receives an appointment to the police force of a city or town shall within nine months after his appointment establish his residence within such city or town or at any other place in the commonwealth that is within ten miles of the perimeter of such city or town. If any person has resided in a city or town for one year immediately prior to filing his application for examination and has the same standing as any person who has not so resided in such city or town, the director of civil service, when establishing the list of eligible applicants, shall place the name of the person so residing ahead of the name of the person not so residing, or upon written request of the appointing authority to the director, the director shall place the names of all persons who have resided in a city or town for one year immediately prior to the date of examination ahead of the name of any person not so residing, provided that the request is made prior to establishment of the eligible list. Approved May 2, 1972."

in a city or town for one year prior to filing application for examination ahead of any other applicant on the list for that city or town if all other things are equal. Furthermore, on written request from the appointing authority for a city or town the director is required to advance the names of all applicants who have resided in a city or town for one year immediately prior to the date of the examination ahead of all other eligible applicants regardless of examination standing. Thus the ordinary ranking of applicants derived from their examination and then adjusted to reflect certain statutory preferences under G. L. c. 31, § 23, is altered. After the list is prepared in the ordinary way all such one-year residents are moved to the top. Therefore, the prospects of appointment for such residents are enhanced. Before the statute became effective on July 31, 1972, the appointing authority of each plaintiff had made written request for the alteration of the lists in the manner required by the statute. On June 12, 1973, the director informed the plaintiffs that, based on an opinion of the Attorney General to the effect that the preferential treatment of one-year residents was unconstitutional, he would not certify names from eligible lists prepared in accordance with c. 226. Thereupon the plaintiffs brought this suit.

The main constitutional infirmity alleged in c. 226 is in the different treatment it accords residents of a city or town of less than one-year's duration prior to application for examination contrasted to that afforded to those with a longer period of residence. The preference given the latter group which meets the durational residence requirement, it is argued, works a penalty on those otherwise equally qualified applicants who have exercised their con-stitutionally protected "right to travel." Therefore the defendants contend that, absent a compelling State justifi-cation, the statute violates the Equal Protection Clause of the Fourteenth Amendment to the United States Con-stitution. In making this argument the defendants rely on a number of cases decided in the United States Supreme Court in which durational residence requirements condi-tioning various rights, services, or benefits have been held

unconstitutional, *Shapiro* v. *Thompson*, 394 U. S. 618 (1969); *Dunn* v. *Blumstein*, 405 U. S. 330 (1972); *Memorial Hosp.* v. *Maricopa County*, 415 U. S. 250 (1974), and upon our recent decision in *Fiorentino* v. *Probate Court, ante*, 13, 25-26 (1974), declaring invalid G. L. c. 208, § § 4-5, which required a two-year residence for certain libellants in divorce actions. We hold that the potential burden on the exercise of the right to travel implicit in c. 226 is not one which properly calls for application of the strict equal protection scrutiny utilized in the cited cases and that the statute is constitutional.

It cannot be gainsaid that c. 226 accords more favorable treatment in the process of selecting police officers to established residents of a town than to newcomers. To some extent, therefore, the statute attaches a cost to the exercise of the right to travel.[2] A statutory scheme which penalizes that right may be justified only by the showing of a compelling governmental interest. *Fiorentino* v. *Probate Court, supra*, at 18-19. Although every durational residence requirement places some burden on the exercise of the "right to travel," not every such requirement imposes a penalty in the constitutional sense. *Shapiro* v. *Thompson, supra*, at 638, n. 21; *Memorial Hosp.* v. *Maricopa County, supra,* at 258-259, and at 284 (Rehnquist, J., dissenting). Unfortunately the Supreme Court has provided little guidance as to what is and what is not a penalty which will trigger such strict scrutiny review. See *id.* at 285 (Rehnquist, J., dissenting). In the *Memorial Hosp.* case, the court, drawing upon prior cases, noted that denial of welfare benefits which made possible the "necessities of life" as in the *Shapiro* case, or the denial of the franchise, "a fundamental political right," as in the *Dunn* case, amount-

---

[2] The "right to travel" allegedly burdened by c. 226 includes intrastate as well as interstate travel. The nature of any constitutional right to the former is still undefined by the Supreme Court. *Memorial Hosp.* v. *Maricopa County, supra*, at 255-256 (1974). See *King* v. *New Rochelle Municipal Housing Authy.* 442 F. 2d 646, 648-649 (2d Cir. 1971), cert. den. 404 U. S. 863. We decide that the statute is constitutional under the standards which have been used respecting interstate travel. Since we presume that no more rigorous test would be applied to burdens on intrastate travel, assuming arguendo that such a right were constitutionally protected, the statute would be constitutional on that score as well.

ed to penalties. The denial of medical care assistance at
issue in the *Memorial Hosp.* case itself was found to be
quite similar to the denial of welfare benefits in the *Shapiro*
case as affecting the "necessities of life." In *Fiorentino* v.
*Probate Court, supra,* we stated that "we believe, in light of
*Boddie* v. *Connecticut,* 401 U. S. 371 (1971), that denial of
access to divorce courts imposed by the two-year residence
requirement amounts to a penalty in the constitutional
sense." *Ante,* at 19, n. 10 (1974). On the other hand, it has
been held that a one-year residence requirement for a lower
tuition rate at a State university is permissible. *Starns* v.
*Malkerson,* 401 U. S. 985 (1971), affg. without opinion 326
F. Supp. 234 (D. Minn. 1970). *Sturgis* v. *Washington,* 414
U. S. 1057 (1973), affg. without opinion 368 F. Supp. 38
(W. D. Wash. 1973). See *Vlandis* v. *Kline,* 412 U. S. 441,
452-453, n. 9 (1973); *Memorial Hosp.* v. *Maricopa County,*
*supra,* at 260, n. 15. We conclude that the denial of equal
treatment on civil service lists for possible appointments to
local police forces does not rise to the level of a denial of
necessities of life or a fundamental political right. It is not a
penalty on the "right to travel" and therefore need not be
justified by a compelling State interest.

It is certainly true that the opportunity to earn a living is
a fundamental right in our society. *Truax* v. *Raich,* 239
U. S. 33, 41 (1915). But the right to earn a living is not at
stake here. It is an equally basic axiom that there is no right
to public employment. See *Brown* v. *Russell,* 166 Mass. 14,
25 (1896). Many years have passed since the decision of this
court in *McAuliffe* v. *Mayor and Bd. of Aldermen of New
Bedford,* 155 Mass. 216 (1892), but we believe Mr. Justice
Holmes's observation at p. 220 of that opinion is still
basically true: "The petitioner may have a constitutional
right to talk politics, but he has no constitutional right to be
a policeman." See *Bell* v. *District Court of Holyoke,* 314
Mass. 622 (1943) (right to employment as a fire fighter);
*Faxon* v. *School Comm. of Boston,* 331 Mass. 531 (1954)
(right to employment as a public school teacher). It is true
of course that the State is not as free as a private employer
in its hiring practices. It may not discharge an employee for

the sole reason that he has chosen to exercise a constitutional right unless the action also demonstrates an independent job-related reason for dismissal. Compare *Slochower* v. *Board of Higher Educ. of New York City*, 350 U. S. 551 (1956), with *Lerner* v. *Casey*, 357 U. S. 468 (1958). See *Gardner* v. *Broderick*, 392 U. S. 273 (1968); *Uniformed Sanitation Men Assn. Inc.* v. *Commissioner of Sanitation of the City of New York*, 392 U. S. 280 (1968). In this Commonwealth it has been held that the refusal to hire or the preferential hiring of some individual class of people for public employment must be related to some reasonable State objective. *Brown* v. *Russell*, 166 Mass. 14 (1896). *Opinion of the Justices*, 303 Mass. 631 (1939). Nevertheless a government may properly discharge (and a fortiori refuse to hire) an individual for actions which bear a reasonable relation to the job even if those actions also involve the exercise of a constitutional right. *Silverio* v. *Municipal Court of the City of Boston*, 355 Mass. 623, 629 (1969), cert. den. 396 U. S. 878 (1969). *Uniformed Sanitation Men Assn. Inc.* v. *Commissioner of Sanitation of the City of New York*, 426 F. 2d 619, 624-625 (2d Cir. 1970), opinion after remand by 392 U. S. 280 (1968). See *United States Civil Serv. Commn.* v. *National Assn. of Letter Carriers, AFL-CIO*, 413 U. S. 548, 564 (1973). In all of these cases the question has not been whether the State has shown a compelling State interest for the dismissal but whether the activity at issue might be reasonably thought to interfere with the duties of the office.[3]

Moreover, unlike the cases discussed above, c. 226 does not require that any person be discharged from State employment or that State employment be foreclosed to any person. Rather it makes the status of certain applicants subordinate to others who possess the requisite length of residence. The director certifies to an appointing authority more names than there are vacancies. In some cases where

---

[3] Compare *Sugarman* v. *Dougall*, 413 U. S. 634 (1973), in which employment discrimination against aliens was held to require demonstration of a compelling State interest since it created an inherently suspect classification.

there are many one-year residents who are eligible applicants, this may prevent a nonresident being certified. But this by no means will be true in every case. An appointing authority is free to choose a certified applicant other than the one at the top of the list if a statement of reasons is filed with the director. G. L. c. 31, § 15, par. C.

Therefore, the burden which this statutory scheme imposes on those who have recently exercised their right to travel comes down to this: they may be placed at a relative disadvantage to one-year residents in the competition for a job to which they have no vested right. We conclude that this burden cannot be regarded as such a drastic deprivation of the rights of citizenship or the means of maintaining life as to trigger the extremely vigorous scrutiny of legislation implicit in the compelling State interest test. See *Fiorentino* v. *Probate Court, ante,* 13, 29-30 (1974) (dissenting opinion of Reardon, J.).

It is still necessary to examine the challenged statute under the traditional standards of the Equal Protection Clause. Those standards are set out in summary form in *Pinnick* v. *Cleary*, 360 Mass. 1, 27-28 (1971), where it was noted that where a "legislative classification is attacked as a violation of equal protection . . . if the legislative difference in treatment is reasonably related to a legitimate public purpose, it is permissible." There is a "subsidiary presumption of constitutionality" and "any reasonably conceivable set of facts" is sufficient to justify it. *Ibid.* "The equal protection clause . . . limits legislative discretion in delineating classifications only to the extent of forbidding 'arbitrary or irrational' classifications . . . or discrimination which is 'invidious.' *Williamson* v. *Lee Optical of Oklahoma, Inc.* 348 U. S. 483, 489." *Ibid.*

It is apparent from the record in this case that the classification implicit in c. 226 is not "arbitrary or irrational" and that it bears a reasonable relation to the legitimate public interest of providing the best possible police protection for the cities and towns of the Commonwealth. At trial the judge heard testimony from James F. Corr, the chief of police of Lexington. Chief Corr made clear the benefits

which police departments might reap from increasing the number of one-year-or-longer residents joining the force. He testified that such residents would be more likely to be immediately familiar with the community. Knowledge of the local geography would allow quicker response, and knowledge of the people could lead to a greater interest and more conscientious effort in the performance of duty. A further advantage consisted of the likelihood that members of the community would be better acquainted with its police officers and, hence, more likely to trust and coöperate with them. The witness also stressed the importance of having police present in the community during off-duty hours to facilitate individual response to matters requiring police intervention as well as to facilitate emergency mobilization. Corr also described Lexington's experience with its police cadet program in which high school graduate residents in the town would be assisted in pursuing college studies in the field of law enforcement while receiving part time training and experience in the local police force over a four or five year period. The same program is in operation in a number of other cities or towns and clearly produces extremely attractive candidates for appointment to these police forces. Such cadets both demonstrate the other characteristics of residents discussed above and will have had valuable practical training in the very locality where they will work. They are likely to be highly effective officers from the very beginning of their service. The preference to residents allowed by c. 226 makes it possible for appointing authorities to choose such graduates of the local cadet program over other candidates whose examination scores may have been higher but who lacked the far more valuable experience provided by the program.[4]

The desirability of resident police officers has received frequent recognition from courts reviewing statutes requir-

[4] The assurance that a public officer will be familiar with the people and geography of a political unit which a residence requirement provides is the rationale for a number of such requirements for political office. See, e.g., United States Constitution, art. 2 (durational residence of fourteen years required to be President of the United States); Massachusetts Constitution, Part II, c. 2, § 1,

ing police officers to be residents of the city which they
serve. See, e.g., *Krzewinski* v. *Kugler*, 338 F. Supp. 492 (D.
N. J. 1972); *Detroit Police Officers Assn.* v. *Detroit*, 385
Mich. 519 (1971), app. dism. 405 U. S. 950 (1972). See also
*Hattiesburg Firefighters Local 184* v. *Hattiesburg*, 263 So.
2d 767 (Miss. 1972). While these cases dealt specifically
with a requirement of residence while employed rather
than a preappointment preference to residents as under
c. 226, the purposes served are largely identical. Another
provision of c. 226 provides that appointees to police forces
must establish residence within the city or town, or within
the Commonwealth within ten miles of the perimeter of the
city or town, within nine months. That provision is not at
issue here. The preappointment preferences improve the
chances that new appointees will possess the desired
characteristics from the very outset of their service rather
than requiring a "breaking-in" period of up to two years
before the same degree of proficiency will be achieved by
new residents. We think it is clear that this preference is
rationally related to the legitimate, indeed critical, public
objective of preserving public order and safety. Even were
we to assume that the ramifications of this policy affecting
the "right to travel" were such that a compelling State
interest were required, we would be hard-pressed to deny
that the improvement in the effectiveness of police service
is such an interest. "[T]he obligation of the government to
protect life, liberty and property against the conduct of the
indifferent, the careless and the evil-minded may be
regarded as lying at the very foundation of the social
compact." *Chicago* v. *Sturges*, 222 U. S. 313, 322 (1911).
See *Krzewinski* v. *Kugler*, 338 F. Supp. 492 (D. N. J. 1972).

We are content, however, to rely on the so called
"rational basis" test. It is conceivable, moreover, that a
third intermediate standard of equal protection review is

art. 2 (durational residence of seven years required to be Governor); Massachu-
setts Constitution Amendments, arts. 16-17 (durational residence of five years
required to be Councillor, Secretary, Treasurer and Receiver-General, and
Attorney General); Massachusetts Constitution Amendments, art. 21, 92 (dura-
tional residence of one year in district required to be a State representative).

appropriate when an allegation of infringement of fundamental constitutional rights and the public interest in a responsive and flexible method of awarding public employment intersect. In a case where employment practice resulting in disproportionate treatment of minority groups was alleged, the court held: "The public employer must, we think, in order to justify the use of a means of selection shown to have a racially disproportionate impact, demonstrate that the means is in fact substantially related to job performance. It may not, to state the matter another way, rely on any reasonable version of the facts, but must come forward with convincing facts establishing a fit between the qualification and the job." *Castro* v. *Beecher*, 459 F. 2d 725, 732 (1st Cir. 1972). See cases cited at 459 F. 2d 733. For whatever it is worth, we are convinced by the evidence discussed above that the requirements of c. 226 also meet this "substantial relationship" test.

It is true that the statute attacked here may grant a preference to some applicants who lack the desired qualities while denying it to some who are amply qualified. But this does not negate the reasonableness of the classification. *Pinnick* v. *Cleary*, 360 Mass. 1, 29-30 (1971). It is impossible to draw legislative classifications to mathematical perfection, and the Fourteenth Amendment does not require such precision. *Dandridge* v. *Williams,* 397 U. S. 471, 485 (1970).

The defendants allege a separate constitutional defect in c. 226. It is charged that the statute creates an "irrebuttable presumption" and is thus offensive to the Due Process Clause of the Fourteenth Amendment. The relatively novel doctrine disfavoring irrebuttable presumptions is a product of a series of recent cases decided by the United States Supreme Court. *Stanley* v. *Illinois*, 405 U. S. 645 (1972). *Vlandis* v. *Kline*, 412 U. S. 441, 446 (1973). *Cleveland Bd. of Educ.* v. *LaFleur*, 414 U. S. 632 (1974). See *Fiorentino* v. *Probate Court, ante,* 13, 24-25 (1974). It is alleged that c. 226 creates an irrebuttable presumption that an applicant who does not fulfill the residence requirement is not as qualified for appointment as one who does. The citation of

these cases is inapposite. First, to the extent that there is any presumption implicit in the statute, it is not "irrebuttable." While the preference created by c. 226 may conclusively determine the order in which names are given on the eligible list and then on the list of those certified to the appointing authority, this ordering is not the critical factor in the decision on appointments. It has already been noted that the certified list contains more names than there are vacancies. The appointing authority may select any name on the certified list if it submits a statement of reasons to the director. G. L. c. 31, § 15, par. C. The order of the list thus creates at most a rebuttable presumption that the candidates appear in order of fitness. If good reason appears to the appointing authority to depart from this order it is free to do so.

Secondly, the *Vlandis* case made clear that with respect to irrebuttable presumptions drawn from the fact of duration of residence only those which are permanent in effect are constitutionally impermissible. 412 U. S. at 452-453, n. 9 (1973). In that case, failure to demonstrate the requisite period of residence at the time of registration resulted in a permanent ineligibility for reduced tuition at a State university. The court contrasted this with the one-year residence requirement for lower tuition in *Starns* v. *Malkerson*, 326 F. Supp. 234 (D. Minn. 1970), affd. 401 U. S. 985 (1971), in which the presumption could be reversed after the year had passed. As in the *Starns* case, the preference accorded to one-year residents here is not permanently denied to those who are new or nonresidents at the time of examination.

The final argument raised by the defendants relates to a possible inconsistency between c. 226 and the consent decree entered in the United States District Court in the case of *Castro* v. *Beecher*, 365 F. Supp. 655 (D. Mass. 1973). That decree was the product of litigation challenging the civil service examination for police in the Commonwealth. As a result of a decision in the United States Court of Appeals, *Castro* v. *Beecher*, 459 F. 2d 725 (1st Cir. 1972), the resulting consent decree as a remedial measure embod-

ied a system for granting absolute priorities to certain groups of minority applicants in the certification of eligible applicants to requisitioning appointing authorities. The defendants contend that if the procedures required by c. 226 conflict with the priority system set up in the decree the operation of the statute must yield.

We express no opinion on the question whether such a conflict exists or what the proper result would be if it does. The effect of the consent decree was not raised in the Superior Court and it appears nowhere in the record. It cannot be raised for the first time before this court. *Henchey* v. *Cox*, 348 Mass. 742, 747 (1965). *Lyon* v. *Bloomfield*, 355 Mass. 738, 743 (1969). *Green* v. *Board of Appeal of Norwood*, 358 Mass. 253, 257 (1970). The wisdom of this rule of appellate procedure is clearly demonstrated by the nature of the contention sought to be raised here. Its proper determination requires a factual record of substantial dimension and consideration of difficult and delicate matters of Federal-State comity. The meager briefing and argument of the point and the absence of any record or prior findings make plain that this is not the proper occasion for such a decision.

We rule that St. 1972, c. 226, is constitutional.

*Decree affirmed.*