DIRECTOR OF CIVIL SERVICE & others[1] *vs.* TOWN OF MILTON & others.[2]

Suffolk.    December 5, 1974. — December 11, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Civil Service.   Public Employment.   Constitutional Law,* Public employment. *Federal Relief.*

Where a decree of the United States District Court in Massachusetts, in order to furnish relief to applicants of certain minority races for police appointments, ordered the establishment of four groups of applicants, and Massachusetts law required certain civil service priorities for veteran applicants and applicants who had resided for one year in the municipality in which appointment was sought, applicants should be certified in accordance with the four groups established by the District Court decree, and the applicants should be ranked in each group separately so as to give effect to the veterans' and residents' preferences required by the Massachusetts law. [504-505]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on July 19, 1974.

The case was reserved and reported by *Reardon,* J.

*Paul A. Good,* Assistant Attorney General, for the Director of Civil Service & others.

*Thomas A. Mela (Patrick J. King* with him) for Pedro Castro.

*Robert D. O'Leary,* Town Counsel, *& Daniel R. Coquillette* for the town of Milton & others.

BRAUCHER, J.    We are asked to reconcile our decision in *Milton* v. *Civil Serv. Commn.* 365 Mass. 368 (1974) (the *Milton* case), with the consent decree in *Castro* v. *Beecher,* 365 F. Supp. 655 (D. Mass. 1973), entered pursuant to the

---

[1] Civil Service Commission and eight individuals admitted as interveners.

[2] Twenty-seven towns and one city in seven counties, including one town admitted as an intervener.

decision in *Castro* v. *Beecher,* 459 F. 2d 725 (1st Cir. 1972). It is represented to us that dispute as to the reconciliation of those decisions has resulted in an "emergency police and public safety situation," because no police appointments can be made until the dispute is resolved. We therefore direct the entry of a decree declaring the obligations of the Director of Civil Service and the Civil Service Commission (the plaintiffs). That decree is to be subject to appropriate revision in the event of any order or decree of the United States District Court, District of Massachusetts, modifying or clarifying the consent decree.

We summarize the facts to which the plaintiffs and the defendant towns and city have stipulated, together with matters of record and matters not in dispute.

In the *Castro* case, the United States Court of Appeals decided that a general intelligence examination, used in the years 1968 through 1970 as the entrance examination for the appointment of police officers, discriminated against minority groups, including black and Spanish-surnamed applicants, and was not significantly related to an applicant's ability to perform the duties of a policeman. 459 F. 2d at 728-729, 735-736. The court therefore ordered "compensatory relief" for black and Spanish-surnamed applicants (hereafter minority applicants), to be achieved through priority pools for such applicants and for applicants on existing eligibility lists.

On remand, the Federal District Court, on April 15, 1973, entered a consent decree. 365 F. Supp. at 660-662. That decree, among other things, ordered the establishment of four groups of eligible police officer candidates for each police department: Group A — minority applicants who failed police entrance examinations in 1968-1970 but passed the 1972 interim examination and were otherwise qualified; Group B — persons on three eligibility lists established in 1970 and 1971; Group C — minority persons not in Group A who passed the 1972 interim examination and were otherwise qualified; Group D — all other persons who passed the 1972 interim examination and were otherwise qualified. The definition of each of the four groups

separately provided: "Said candidates [or 'persons'] shall be ranked in accordance with existing Massachusetts law." Candidates were to be certified to police departments on the basis of one candidate from Group A for every candidate certified from Group B until Group A was exhausted. Thereupon one candidate from Group C was to be certified for every three candidates from Group B until Groups B and C were exhausted. The three lists in Group B were to expire on dates now past. Upon the exhaustion of Groups A, B and C, candidates were to be certified from Group D. The list comprising Group D is to expire in May, 1975.

Statute 1972, c. 226,[3] provided for priority for police applicants who have resided for one year in the appointing city or town (hereafter residents). On April 5, 1973, the Attorney General rendered an opinion to the Director of Civil Service to the effect that the priority provision was unconstitutional. Rep. A. G., Pub. Doc. No. 12 (1973), p. 109. The existence of that provision was not brought to the attention of the Federal judge in the proceedings leading to the consent decree entered in the *Castro* case on April 15, 1973, although an assistant attorney general consented to the decree.

---

[3] General Laws c. 31, § 48A, was amended by St. 1972, c. 226, and by St. 1974, c. 650. Language in *italics* was added by the 1974 amendment; language in brackets [] was deleted: "No applicant for appointment to the police force *or fire force* of a city or town shall be required by rule [,] or otherwise, to be a resident of such city or town at the time of filing his application for examination for such appointment; provided, however, that notwithstanding the provisions of any general or special law to the contrary, any person who receives an appointment to the police force *or fire force* of a city or town shall within nine months after his appointment establish his residence within such city or town or at any other place in the commonwealth that is within ten miles of the perimeter of such city or town. If any person has resided in a city or town for one year immediately prior to [filing his application for] *the date of such* examination and has the same standing as any person who has not so resided in [such] *said* city or town, the director [of civil service], when [establishing the list of eligible applicants] *certifying names from the eligible list to the appointing authority for the police force or fire force of said city or town,* shall place the name of the person *who has* so [residing] *resided* ahead of the name of the person *who has* not so [residing] *resided,* or upon written request of the appointing authority to the director, the director shall, *when certifying names from the eligible list for appointment to the police force or fire force of a city or town,* place the names of all persons who have resided in [a] *said* city or town for one year immediately prior to the date of examination ahead of the name of any person *who has* not so [residing] *resided* [, provided that the request is made prior to establishment of the eligible list. The commission may by rule require that any such applicant shall have resided in the commonwealth for one year prior to filing such application]."

In October, 1973, the defendant towns and city brought a suit against the present plaintiffs, seeking a declaration that the priority for residents was constitutional. Such a declaration was decreed in the Superior Court early in 1974, and the decree was affirmed by this court on June 5, 1974, in the *Milton* case. The effect of the consent decree was not raised in the Superior Court in that case, and we refused to permit it to be raised for the first time in this court. 365 Mass. at 379.

The present plaintiffs believe that they are required by the consent decree in the *Castro* case to maintain four lists of eligible applicants for police positions. The defendant towns and city objected to the manner in which the plaintiffs were preparing to certify applicants, maintaining that it did not comply with St. 1972, c. 226, and they sought and obtained on June 26, 1974, in addition to a final decree after rescript in the *Milton* case, an order by the same judge of the Superior Court providing in detail for compliance with that decree. That order, without reference to the Federal consent decree, provided for certification in the following order: (1) disabled veterans who are residents, (2) veterans who are residents, (3) residents, (4) disabled veterans who are nonresidents, (5) veterans who are nonresidents, (6) nonresidents. The order also enjoined the plaintiffs from certifying any police civil service lists in any other form. The town of Milton then made thirteen appointments to the police department, believing them to be in accordance with the order, and the plaintiff director notified the town that the appointments could not be processed.

Thereafter the plaintiffs in the *Castro* case sought an injunction in the Federal District Court against the present plaintiffs and the defendant towns and city, requiring them to comply with the consent decree. None of the defendant towns and city had previously been a party in the *Castro* case. On July 15, 1974, a Federal district judge entered a temporary restraining order enjoining the present plaintiffs from approving any appointments not in conformity with the consent decree.

On July 19, 1974, the present plaintiffs filed the complaint in the present action in the county court, alleging that they were subject to contemporaneous conflicting injunctions, and seeking relief under G. L. c. 211, §§ 3 and 4A. On August 5, 1974, a single justice of this court entered an order transferring the *Milton* case to the county court, staying further proceedings in that case, admitting a twenty-seventh town as an intervener, and directing the completion of pleadings.

Thereafter the defendant towns and city filed five motions in the current *Castro* case in the Federal court: (1) to be joined as indispensable parties or to intervene as of right, (2) to convene a three-judge court, (3) to clarify, amend or vacate the temporary restraining order, (4) to clarify the consent decree, and (5) to vacate the consent decree and judgment. Memoranda were filed and the motions were argued on September 16, 1974, but no decision had been made as of November 18, 1974.

On November 25, 1974, a single justice of this court reserved and reported the present case to the full court without decision. The plaintiffs in the *Castro* case, minority applicants for police positions, sought leave to file a brief in the present case as friends of the court, but instead a motion was allowed to add them as parties plaintiff. At oral argument on December 5, 1974, they filed a motion to supplement the record. The motion was objected to, and is denied.

1. *Federal issues.* The parties make numerous arguments on issues of Federal jurisdiction and procedure and Federal constitutional law. The plaintiffs argue that the supremacy clause of the United States Constitution permits the suspension of valid State laws and judgments where their operation might conflict with the effectuation of a Federal judgment designed to remedy constitutional violations. They also contend that the defendant towns and city, though not parties to the *Castro* case, were "legally and morally before the Court" as State agencies. The intervener plaintiffs add claims not founded on the record before us: twenty-four of the twenty-seven defendant towns

and city, they say, have all-white police departments, and
the priority for residents would inevitably have the impact
of "freezing in the effects of generations of past dis-
crimination." They explain at length that the *Castro* case
was correctly decided, and that valid State laws must
therefore yield, citing *United States* v. *Greenwood Munici-
pal Separate Sch. Dist.* 406 F. 2d 1086 (5th Cir. 1969), cert.
den. 395 U. S. 907 (1969); *Burns* v. *School Commrs. of
Indianapolis,* 302 F. Supp. 309 (S. D. Ind. 1969), affd. 437
F. 2d 1143 (7th Cir. 1971); *Coffey* v. *Braddy,* 372 F. Supp.
116 (M. D. Fla. 1971).

On the other side, the defendant towns and city assert
that only a three-judge Federal court can enjoin the
enforcement of a State statute where there is a substantial
question as to its constitutionality. This was recognized at
an early stage in the *Castro* case, they say, citing *Castro* v.
*Beecher,* 334 F. Supp. 930, 938 (D. Mass. 1971), and was
reaffirmed with respect to statutory veterans' preferences
when the consent decree was entered. 365 F. Supp. at
660. The requirement of a three-judge court is juris-
dictional, and cannot be avoided by consent or waiver.
*Americans United for Separation of Church & State* v.
*Paire,* 475 F. 2d 462, 464 (1st Cir.1973). Since the consent
decree in the *Castro* case was entered by a single judge, that
decree should therefore be read to preserve the priority for
residents rather than "to spread minorities about the
state." The decree in the *Castro* case was based on data
limited to Boston, they argue further, and an extension of
the remedy to towns and cities which were not before the
court might violate the principle of *Milliken* v. *Bradley,* 418
U. S. 717 (1974). Racial preferences for minorities may
themselves be unconstitutional. Cf. *DeFunis* v. *Odegaard,*
416 U. S. 312 (1974).

We decline to venture into these troubled waters. All
these questions have been submitted to the appropriate
Federal court. In the words of the August 5, 1974, order of
the single justice of this court, "it is appropriate for the
United States District Court for the District of Massachu-
setts to have an opportunity in . . . [the *Castro* case], or in

other appropriate proceedings, to define the proper rela-
tionship between the prescriptions of the final judgment of
April 15, 1973, in the *Castro* action and the requirements of
Mass. St. 1972, c. 226, with respect to residency." We think
it is equally appropriate for the Federal court to have an
opportunity to resolve issues as to the validity and effect of
its consent decree with respect to parties brought into the
case after the decree was entered.

2. *State jurisdiction.* The question remains whether
this court should act at all, or whether, as the intervener
plaintiffs contend, we should abstain entirely. We are told
that the defendant towns and city have been unable to
make police appointments for several years because of the
uncertainties here in issue. The result is that hundreds of
applicants, both minority applicants and others, do not
know where they stand and cannot intelligently plan their
affairs. The intervener plaintiffs asserted in argument that
the appointments of minority applicants as a result of the
*Castro* consent decree have been disappointing in number.
Finally, we are told that the situation now verges on public
emergency. In these circumstances we think we must take
the action required to clarify the questions of State law
presented by the consent decree, so far as we can do so
without trespassing on the Federal court's domain.

3. *The consent decree and State law.* We find little
ambiguity in the Federal consent decree. Within each of
the four mandated groups candidates are to be ranked in
accordance with State law. Nor is there serious difficulty in
such ranking. Apart from the Federal consent decree, all
the parties seem to agree with the six-category ranking
ordered by the Superior Court judge on remand in the
*Milton* case. 365 Mass. 368 (1974). The plaintiffs should
therefore promptly certify candidates in accordance with
the Federal decree, and so far as that decree permits should
rank the candidates in the six categories required by State
law. As we read that decree, it permits ranking of candi-
dates according to State law within each of the four groups
established by the decree.

We are aware of the decisions in *Boston Chapter, NAACP, Inc.* v. *Beecher,* 371 F. Supp. 507 (D. Mass. 1974), affd. 504 F. 2d 1017 (1st Cir. 1974). That case was much like the *Castro* case except that it involved firefighters instead of policemen. It was decided in the Federal District Court before the enactment of the 1974 amendment extending to firefighters the State priority for residents (see fn. 3). The court created four eligibility groups, as in the *Castro* case, but limited its decree to communities having a minority population of one per cent or more, and freed from the decree any community which attained a percentage of minority firefighters approximately equal to the percentage of minorities in the community. *Id.* at 1026-1027. We think it proper to say that, if we were free to make an independent judgment, we should strongly prefer a solution modeled on that adopted in the firefighters case.

4. *Disposition.* The supplementary order entered in the Superior Court on June 26, 1974, is vacated. The case is remanded to the county court. The single justice is to enter a judgment declaring that, in certifying police applicants in accordance with the four groups created by the Federal consent decree, Massachusetts preferences for residents and veterans are to be given effect separately in each of those groups. Within each group eligible candidates are to be ranked in the following order: (1) disabled veteran residents, (2) veteran residents, (3) residents, (4) disabled veteran nonresidents, (5) veteran nonresidents, (6) nonresidents. The judgment is to be subject to revision by the single justice in the event of any relevant decision in the pending Federal case involving the same parties.

*So ordered.*