R.W. GRANGER & SONS, INC.[1] *vs.* J & S INSULATION, INC.;
UNITED STATES FIDELITY & GUARANTY COMPANY,
defendant-in-counterclaim.

Worcester. May 10, 2001. - September 6, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Consumer Protection Act,* Unfair or deceptive act, Damages, Interest, Attorney's fees, Offer of settlement, Surety. *Insurance,* Unfair act or practice, Settlement of claim. *Surety.*

This court declined to consider claims raised for the first time on appeal. [73-74, 79, 85-86]

Evidence presented at the trial of a subcontractor's claim against the surety of a general contractor amply supported the judge's conclusion that the surety had failed to effectuate a prompt, fair, and equitable settlement of a claim after liability had become reasonably clear, in violation of G. L. c. 176D, § 3 (9) (*f*), and had compelled the subcontractor to initiate litigation to recover the amount due by failing to timely present an offer to settle and by subsequently making an inadequate settlement offer, in violation of G. L. c. 176D, § 3 (9) (*g*) [74-78]; further, the evidence of these violations, as well as of other conduct by the surety, warranted the judge's conclusion that the surety wilfully or knowingly engaged in unfair business practices proscribed by G. L. c. 93A, § 11 [78-79].

In an action brought under G. L. c. 93A for a surety's unfair business practices in settling a surety bond claim against it, in which the judge found that the surety had acted knowingly or wilfully in violation of the statute, the judge applied the correct measure of damages (i.e., doubling the amount of the judgment entered against the surety on the underlying surety bond claim) and correctly included the interest and attorney's fees components of the judgment in the amount of damages subject to multiplication. [81-85]

A trial court judge properly denied a defendant's motion for a new trial or, in the alternative, a rehearing, on an issue not challenged by the defendant at trial. [86]

CIVIL ACTION commenced in the Superior Court Department on May 11, 1992.

Claims under G. L. c. 93A were heard by *Daniel F. Toomey,* J., and motions to amend the judgment and for a new trial were heard by him.

---

[1] R.W. Granger & Sons, Inc. (Granger), is not a party to this appeal.

The Supreme Judicial Court granted an application for direct appellate review.

*Anthony R. Zelle (Michael D. Lurie & Mark Holtschneider* with him) for United States Fidelity & Guaranty Company.

*Gerald I. Katz,* of Virginia *(Eric B. Travers,* of Virginia, *& Carol Frisoli* with him) for the defendant.

MARSHALL, C.J. At issue in this appeal is the validity of a substantial punitive judgment entered against United States Fidelity and Guaranty Company (USF&G) in favor of J & S Insulation, Inc. (J&S). J&S was a subcontractor to R.W. Granger & Sons, Inc. (Granger), the general contractor on construction work at Logan Airport, for whom USF&G was the surety. See G. L. c. 149, § 29.[2] The punitive damages were awarded after a judge in the Superior Court concluded that USF&G had wilfully and knowingly violated G. L. c. 93A in the wake of a jury verdict against Granger on a breach of contract claim by J&S.

On appeal, USF&G argues that the judge erred in (1) ruling that USF&G wilfully or knowingly committed unfair or deceptive business practices in violation of G. L. c. 93A; (2) us-

---

[2]General Laws c. 149, § 29, states in pertinent part:

> "Officers or agents contracting in behalf of the commonwealth or in behalf of any . . . public instrumentality for the construction, reconstruction, alteration, remodeling, repair or demolition of public buildings or other public works when the amount of the contract in the case of the commonwealth is more than five thousand dollars, and in any other case is more than two thousand dollars, shall obtain security by bond in an amount not less than one half of the total contract price, for payment by the contractor and subcontractors for labor performed or furnished and materials used or employed therein . . . ."

The statute provides further that "[i]n order to obtain the benefit of such bond for any amount claimed due and unpaid at any time, any claimant having a contractual relationship with the contractor principal furnishing the bond, who has not been paid in full for any amount claimed due for the labor, materials, equipment, appliances or transportation included in the paragraph (1) coverage within sixty-five days after the due date for same, shall have the right to enforce any such claim (*a*) by filing a petition in equity within one year after the day on which such claimant last performed the labor or furnished the labor, materials, equipment, appliances or transportation included in the claim and (*b*) by prosecuting the claim thereafter by trial in the superior court to final adjudication and execution for the sums justly due the claimant as provided in this section."

ing the underlying judgment against it under G. L. c. 149, § 29, as the basis for calculating J&S's double damages under G. L. c. 93A; and (3) awarding "facially unreasonable" attorney's fees to J&S on its G. L. c. 93A claim. USF&G also appeals from the judge's denial of its posttrial motions and its motion for a new trial or rehearing to determine J&S's attorney's fees. We affirm in all respects the judgment against USF&G and the denial of its posttrial motions for relief.

1. *Background.* The circumstances giving rise to the punitive damages award are these. In May, 1992, Granger sued J&S seeking damages for breach of the Logan Airport subcontract. J&S counterclaimed to like effect, adding a claim that by wrongfully withholding payments from J&S, Granger had violated G. L. c. 93A, § 11. At the same time, J&S asserted a counterclaim under G. L. c. 149, § 29, against USF&G alleging that USF&G was liable to J&S on the surety bond to the same extent that Granger was liable to it on the subcontract.

A jury trial on the contract claims between Granger and J&S was conducted in October, 1994. The trial judge reserved for later adjudication, without a jury, J&S's claim against Granger under G. L. c. 93A, and its claim against USF&G under G. L. c. 149. On October 26, 1994, a jury returned a $203,867.31 verdict against Granger in favor of J&S. Some ten months later, on September 6, 1995, judgment entered against Granger in the amount of $307,527.31, the amount of the verdict with interest. That same day, judgment entered in favor of J&S against USF&G as surety pursuant to G. L. c. 149, § 29, in the amount of $410,245.83, the amount of the verdict, interest, and statutory attorney's fees. We explain later the significance of those judgments.

In order to explain our rulings on USF&G's various challenges to the punitive judgment against it, we now summarize in greater detail the procedural events that followed the October, 1994, jury verdict against Granger on J&S's subcontract claim. Following the jury verdict, J&S immediately made demand on USF&G for payment "on account consistent with the jury verdict." J&S also informed USF&G that it would separately "deal with" the issue of attorney's fees and costs recoverable under G. L. c. 149, § 29. J&S, receiving no response from

USF&G, filed a motion seeking entry of judgment against USF&G, as surety, including treble damages for violations of G. L. c. 93A, § 11, and G. L. c. 176D. At that time J&S's only claim pending against USF&G was the G. L. c. 149, § 29, surety claim.

On February 21, 1995, four months after the jury verdict, the judge permitted J&S to amend its complaint to include a G. L. c. 93A, § 11, claim against USF&G; by that date J&S had received no payment or offer of settlement, despite the jury verdict. The judge limited the G. L. c. 93A claim against USF&G to events "occurring subsequent to" the jury's October, 1994, verdict establishing the liability of Granger.[3]

On March 13, 1995, USF&G answered J&S's amended complaint. It both denied that J&S was entitled to the benefits of the surety bond, and that its conduct violated G. L. c. 93A. However, at a hearing on March 15, 1995, to address J&S's bond claim, USF&G did not contest the introduction of the payment bond in evidence and presented no evidence or argument to contest its surety liability. On March 16, 1995, USF&G offered to settle all of J&S's claims for $230,000. The offer was promptly rejected.

There matters stood until September 6, 1995, when, as noted above, separate judgment entered against Granger on the underlying subcontract claim in the amount of $307,527.31, representing the subcontract verdict of $203,867.31, together with statutory interest in the amount of $103,660. At the same time, a separate judgment entered against USF&G on J&S's bond claim in the amount of $410,245.83, representing the amount of the jury verdict against Granger, $203,867.31, together with $86,835.02 interest on that claim,[4] and $119,543.50 in attorney's fees. Finally, on October 6, 1995, Granger and USF&G unconditionally

---

[3]The order states that the amendment was limited "to claims of violations of [G. L. c. 93A, § 11,] occurring subsequent to the return of the verdict establishing the liability of" Granger. In allowing the motion, the judge noted that "certainly pre-October [1994, the date of the jury verdict,] conduct might be relevant to post-October violations."

[4]The judge calculated the interest against USF&G on the bond claim from May 7, 1992, and the interest against Granger on the contract claim from September 6, 1991.

paid J&S all amounts due on those two judgments,[5] neither of which is at issue in this appeal.

Meanwhile, J&S's claims under G. L. c. 93A against USF&G and Granger remained to be resolved. A trial of those claims occurred on November 30, 1998. USF&G did not call any witnesses, nor did it tender any documents in evidence. It was agreed that evidentiary matters received during the 1994 trial on the underlying subcontract would, to the extent material, be considered by the judge.

At the conclusion of the trial, in a memorandum filed January 22, 1999, the judge ruled against J&S on its G. L. c. 93A claim against Granger.[6] The judge concluded, however, that USF&G "acted, post-verdict, willfully or knowingly in a manner prohibited by G. L. c. 93A, § 2." See Part 2, *infra*. He ordered USF&G to pay J&S double damages in the amount of $820,491.66, (representing double the amount of the underlying judgment against USF&G), together with interest on $410,245.83 from February 21, 1995 (the date of J&S's pleading under G. L. c. 93A against USF&G), to August 25, 1995 (when Granger and USF&G first proffered payment on the underlying judgments), in the sum of $79,100.62.

Following entry of that judgment against it, USF&G filed a motion to amend judgment, Mass. R. Civ. P. 59 (e), 365 Mass. 827 (1974); or in the alternative to amend, clarify, and correct the findings of the court, Mass. R. Civ. P. 52 (b), as amended, 423 Mass. 1402 (1996), and Mass. R. Civ. P. 60 (a), 365 Mass. 828 (1974). The judge granted USF&G's motion only with respect to the amount of interest awarded to J&S on its G. L. c. 93A claim against USF&G.[7] In addition, the judge awarded

---

[5]On August 25, 1995, Granger tendered to J&S a check in the amount of $417,189.81. On September 1, 1995, J&S rejected the check from Granger because it was marked "settlement." In October, 1995, J&S accepted another check from Granger in the same amount. The October check was accompanied by a letter from counsel for Granger and USF&G stating that the check was to be "considered an unconditional payment in accordance with [the judge's] order."

[6]The judge found that there were no unfair or deceptive acts or practices in Granger's "sorry performance of its contractual obligations to J&S," and that J&S "must be content with its common law remedy."

[7]The judge reduced the interest award from $79,100.62 to $25,161.76.

J&S $120,631.52 in attorney's fees with respect to the G. L. c. 93A claim.

On May 27, 1999, USF&G filed a motion pursuant to Mass. R. Civ. P. 59 (a), 365 Mass. 827 (1974), for a new trial or a rehearing on the award of attorney's fees to J&S on the G. L. c. 93A claim. The judge denied the motion. USF&G filed an appeal from the judgment under G. L. c. 93A, and from the denial of its posttrial motions to set aside that judgment and the award of attorney's fees. We granted its application for direct appellate review.

2. *USF&G's liability.* We consider first USF&G's challenge to the judge's ruling on liability. It argues that there was insufficient evidence to support a conclusion that it wilfully or knowingly violated G. L. c. 93A. We summarize the judge's findings.

On March 16, the day after the hearing on the payment bond, USF&G offered to settle all of J&S's claims for $230,000, which J&S rejected. The judge found that there was no evidence to explain the delay of more than four months from J&S's demand for payment on November 2, 1994, and USF&G's offer of settlement. He also found that the offer was "wholly inadequate" in light of the jury verdict, the "likely" interest calculations, and the attorney's fees "reasonably expected to be awarded."

The judge then ruled that USF&G's "inexplicably tardy" and inadequate offer, and other "cavalier" postverdict conduct, constituted violations of several provisions of G. L. c. 176D.[8] He found that USF&G had failed to conduct "a reasonable investigation" of Granger's dispute with J&S both prior to and after the jury verdict, in violation of G. L. c. 176D, § 3 (9) (*d*) (see note 3, *supra*); failed to exercise its duty to "affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed," in violation of G. L. c. 176D, § 3 (9) (*e*); and failed to effectuate "prompt, fair and equitable settlements of claims in which liability has become reasonably clear," in violation of G. L. c. 176D, § 3 (9) (*f*). Additionally,

---

[8]USF&G does not contest the judge's ruling that the provisions of G. L. c. 176D are applicable to a payment bond surety such as USF&G. See G. L. c. 176D, § 1 (*c*).

the judge found that USF&G had violated G. L. c. 176D, § 3 (9) (*g*), which prohibits an insurer from forcing an insured "to initiate litigation to recover amounts due . . . by offering substantially less than the amounts ultimately recovered," when it compelled J&S to pursue litigation under G. L. c. 93A, first by failing to present an offer to settle in response to J&S's November, 1994, demand letter, and later by making an inadequate settlement offer.

Having found that USF&G had violated these several provisions of G. L. c. 176D, § 3 (9), the judge then turned to J&S's claim under G. L. c. 93A. The violations of G. L. c. 176D were "persuasive evidence," the judge said, that USF&G had engaged in "unfairness under Chapter 93A." The judge further found that USF&G had engaged in unfair business practices in violation of G. L. c. 93A, independent of any violations of G. L. c. 176D. He ruled that USF&G's presentation to J&S of "a manifestly inadequate offer of settlement" had compelled J&S to "re-commence litigation" under G. L. c. 93A in February, 1995, and that its March 9, 1995, answer to J&S's claim was "an insincere response calculated solely to avoid the inevitable day of reckoning." The totality of this conduct, the judge concluded, amounted to "willful or knowing unfair and deceptive acts and practices . . . in violation of G. L. c. 93A."

USF&G contests both the judge's determination that it was liable to J&S under G. L. c. 93A and his denial of its posttrial motions to amend the judgment. We first address USF&G's attack on the judgment itself.

USF&G challenges the liability judgment on three grounds. First, it asserts that the judge erred in concluding that it had violated G. L. c. 93A, § 11, because violations of G. L. c. 176D "do not support a claim" under G. L. c. 93A, § 11. Second, it argues that, in any event, there was insufficient evidence to support the judge's finding that its conduct after the jury verdict of October 26, 1994, constituted a violation of any provision of G. L. c. 176D, § 3 (9). Third, it asserts that there was no other independent evidentiary basis for the judge's ruling on liability under G. L. c. 93A because its postverdict conduct was neither "unfair and deceptive," nor "willful or knowing."

Before we address the merits of these arguments, we consider a procedural claim raised by J&S, namely that USF&G has failed to preserve "the entirety" of its appellate rights. J&S argues that, because USF&G seeks (as stated in its brief)[9] "reversal or modification of the lower court's legal conclusions, *not* its factual findings" (emphasis added), USF&G's liability should be deemed waived in light of the "established" principle, according to J&S, that whether a defendant's conduct is "unfair or deceptive" within the meaning of G. L. c. 93A is a question of fact, not law. There is scant merit to the point. A ruling that conduct violates G. L. c. 93A is a legal, not a factual, determination. See *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 474 (1991) (conduct amounted to "unfair or deceptive act or practice" as matter of law); *Schwanbeck* v. *Federal-Mogul Corp.*, 31 Mass. App. Ct. 390, 414 (1991), *S.C.*, 412 Mass. 703 (1992) ("[a]lthough whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact . . . the boundaries of what may qualify for consideration as a [G. L. c.] 93A violation is a question of law" [citation omitted]). Cf. *Spence* v. *Boston Edison Co.*, 390 Mass. 604, 616 (1983) (whether conduct was unfair in violation of G. L. c. 93A is question of fact).

Next, J&S claims that USF&G has waived its right to contest liability because USF&G challenged the basis of the judge's G. L. c. 93A rulings for the first time in its postjudgment motions. J&S points to the fact that USF&G chose not to offer any evidence to justify or even explain its postverdict conduct, and claims that USF&G did not raise *any* of its theories challenging the basis of G. L. c. 93A liability before entry of judgment on that claim.

It is, of course, axiomatic that an appellate court need not consider a claim that is asserted for the first time after judgment has entered below. See *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Admin. & Fin.*, 369 Mass. 562, 565 (1976) (argument raised for first time in posttrial motion need not be considered on appeal); *Milton* v. *Civil Serv. Comm'n*, 365 Mass. 368, 379 (1974) (issue "cannot be raised for the first time" on

---

[9]While it says that it does not challenge the judge's findings, USF&G does request "critical assessment" of those findings.

appeal). The reason for this fundamental rule of appellate practice is well established: it is important that an appellate court have before it an adequate record and findings concerning a claim to permit it to resolve that claim properly. See *id.* We therefore consider the merits of appellate arguments to the extent raised by USF&G before the entry of judgment, except where specifically provided. See, e.g., Mass. R. Civ. P. 52 (a), as amended, 423 Mass. 1402 (1996).

Returning now to the merits of USF&G's claims, we may dispose of its first argument on procedural grounds. USF&G argued for the first time in its postjudgment motion that violations of G. L. c. 176D, § 3 (9), do not "support" a finding of a violation of G. L. c. 93A, § 11. J&S is correct that the point was not raised before the trial judge prior to the entry of judgment, and is therefore not properly before us. See *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Admin. & Fin.,* *supra*; *Milton* v. *Civil Serv. Comm'n, supra.* See also *DiVenuti* v. *Reardon,* 37 Mass. App. Ct. 73, 79-80 (1994) (letting stand judge's finding that G. L. c. 176D violations support finding of G. L. c. 93A, § 11, violation where defendant failed to raise issue).

As to USF&G's second argument — that its postverdict conduct did not in any event violate any provision of G. L. c. 176D — some but not all aspects of that claim have been waived. J&S claimed at the G. L. c. 93A trial that USF&G had violated G. L. c. 176D, § 3 (9) (*d*) ("reasonable investigation"), and (*e*) ("affirm or deny coverage"), and that USF&G's preverdict failure to investigate Granger's liability was "probative of [its] post-verdict lack of diligence in like circumstances," by failing to investigate the dispute between J&S and Granger both before and after the October, 1994, jury verdict, and by denying that it was liable on the surety bond long after the verdict and only in the wake of J&S's initiation of a G. L. c. 93A claim against it. In response, USF&G did not adduce any evidence to the contrary, did not raise the issues in any argument at the bench trial, and did not address these subparts of G. L. c. 176D, § 3 (9), in any of its posttrial motions. We do not consider them.

USF&G did, however, preserve its appellate right to chal-

lenge the judge's rulings under G. L. c. 176D, § 3 (9) (*f*) ("prompt, fair" settlement after liability is "reasonably clear") and (*g*) (prohibiting insurers from compelling insureds to institute litigation).[10] On the merits USF&G fares no better. The evidence amply supports the judge's determination that USF&G violated G. L. c. 176D, § 3 (9) (*f*).[11] By October, 1994, the date of the jury verdict, liability was "reasonably clear."[12] Liability for purposes of G. L. c. 176D, § 3 (9) (*f*), encompasses both "fault" and "damages." *Clegg* v. *Butler*, 424 Mass. 413, 421 (1997). USF&G does not contest that the jury verdict resolved the issue of Granger's "fault," or its own obligation to J&S as Granger's surety. As to damages, it argues only that, because the judge did not rule until July, 1995, on the amount of attorney's fees to which J&S was entitled on the bond, J&S's damages were not "reasonably clear" until that date. Our law is otherwise. For purposes of G. L. c. 176D and G. L. c. 93A, damages may be "reasonably clear" well before, or indeed in

---

[10]We give USF&G the benefit of some considerable doubt on this point. In his closing argument at trial, USF&G's counsel did not refer to G. L. c. 176D, § 3 (9) (*f*) and (*g*). He did argue that USF&G had not used any "leveraging tactic[s]" to force J&S to agree to a "low ball" settlement, and that "[t]he $230,000 offer reflects risks, reflects that there is an issue out there that [has] not been determined."

[11]USF&G argues that no liability under G. L. c. 176D, § 3 (9), can attach because on November 2, 1994, J&S "unequivocally" demanded full payment of the jury verdict and interest, and made clear to USF&G that it would not consider any settlement offer in a lesser amount. Because J&S erected such an "extreme" barrier to any settlement negotiations, USF&G continues, any settlement efforts on its part would have been pointless. The judge made no such findings, nor could he, because USF&G introduced no evidence and made no argument to that effect. Cf. *Yeagle* v. *Aetna Cas. & Sur. Co.*, 42 Mass. App. Ct. 650, 652 (1997). In any event, whatever merit there may be to that position, see, e.g., *Forcucci* v. *United States Fid. & Guar. Co.*, 11 F.3d 1 (1st Cir. 1993), we do not consider the argument because USF&G raised the point for the first time in its posttrial motion to amend the judgment, and it is therefore waived. See *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Admin. & Fin.*, 369 Mass. 562, 565 (1976); *Milton* v. *Civil Serv. Comm'n*, 365 Mass. 368, 379 (1974). Before filing its posttrial motions, USF&G addressed the allegation that it had violated G. L. c. 176D, § 3 (9) (*f*), only in its closing argument at the trial of J&S's G. L. c. 93A claim. See note 10, *supra*. Even then, USF&G's counsel argued only that its offer of $230,000 was reasonable. He did not assert or even hint that any conduct of J&S had thwarted any efforts to settle the case.

[12]USF&G has not suggested that there were any errors in the underlying trial of the contract issues or that any good faith appeal was contemplated.

the absence of, a judicial order resolving every contested issue as to monies owed. See *Clegg* v. *Butler, supra* at 418 ("we reject [the] conclusion that . . . the insurer owes no duty to the third-party claimant . . . 'until both liability and damages have been determined in an appropriate, legal forum or agreed upon' "). In the circumstances of this case, the jury verdict against Granger and the certainty that USF&G, as Granger's surety, would be responsible for paying that verdict, as well as interest and reasonable attorney's fees, was more than sufficient to subject USF&G to the requirements of G. L. c. 176D, § 3 (9) (*f*).

The evidence also supports the judge's conclusion that USF&G failed to "effectuate prompt, fair and equitable settlement[ ]," the second requirement of G. L. c. 176D, § 3 (9) (*f*). There is evidence to support a determination that USF&G's settlement attempts were not "prompt": USF&G made its first settlement offer more than four months after the jury verdict in late October, 1994, and J&S's demand in early November, 1994, and USF&G offered no explanation for its subsequent delay (of almost one year) in effectuating payment to J&S.

There was also sufficient evidence to support a finding that USF&G's offer to settle for $230,000 was neither "fair" nor "equitable." USF&G made only the most cursory efforts at trial to argue that its "low-ball" offer was a reasonable opening response. See note 10, *supra.* By the time USF&G made its only settlement offer, on March 16, 1995, it was (or should have been) aware that J&S was entitled to recover the underlying jury verdict of more than $203,000, interest in the amount of at least $69,901.86, as well as reasonably expected attorney's fees.[13] Only the amount of J&S's attorney's fees remained to be quantified. It is of some significance that USF&G offered no

---

[13] At the March 15, 1995, hearing on the bond claim, the judge informed the parties that interest on the jury verdict would be assessed against Granger from September 6, 1991, and against USF&G from May 7, 1992. While USF&G is correct that as of March 16, 1995, the amount of attorney's fees had not been adjudicated, there was no longer any question that J&S was entitled to receive attorney's fees. At the hearing on that date, the judge stated to the parties that "I think [J&S] is entitled to [G. L. c. 149, § 29,] attorney's fees under the statute . . . for all of [the attorney's] activities with respect to even the underlying suit."

explanation for its actions and introduced no evidence at the G. L. c. 93A trial concerning, for example, industry practices. Cf. *Yeagle* v. *Aetna Cas. & Sur. Co.*, 42 Mass. App. Ct. 650, 652 (1997) (insurer introduced expert testimony concerning settlement practices). If a losing party intends to take an appeal and to challenge the basis of the amount of a jury verdict, it may be reasonable to offer a compromised amount in settlement. But no appeal or other challenge to the jury verdict was pending (or ever filed), there is no evidence that any appeal was contemplated, and, as the judge noted, USF&G could not "reasonably justify the quantum of its settlement 'offer' on the grounds that it would, by settlement, surrender an opportunity to challenge the verdict."

There was also evidence that after J&S rejected what the judge properly found to be a "monetarily unrealistic" and "wholly inadequate" settlement offer, USF&G made no further attempts to settle the claim. The judge's conclusion that USF&G did not effectuate prompt, fair, and equitable settlement of the underlying judgment is supported by the evidence.

The judge's ruling that USF&G compelled J&S to commence litigation, in violation of G. L. c. 176D, § 3 (9) (*g*), is also sound. That provision "express[es] a legislative purpose to penalize the practice of 'low balling,' i.e., offering much less than a case is worth in a situation where liability is either clear or highly likely." *Guity* v. *Commerce Ins. Co.*, 36 Mass. App. Ct. 339, 343 (1994). There was ample evidence to support the judge's findings that J&S was forced to pursue its claim on the bond for nearly one year after the jury verdict. USF&G "inexplicably" failed to extend any settlement offer for nearly four months after the jury verdict, and only then offered a settlement offer that was "substantially less" than the minimum amount clearly due under the payment bond. USF&G's denial of liability on the bond (as set forth in its March 13, 1995, answer) necessitated a hearing, at which USF&G came forward with no basis for contesting liability on the bond. It reasonably may be inferred from the evidence that USF&G denied payment, interposed a groundless denial of liability, and then offered a substantially reduced settlement amount because it sought to leverage a favorable settlement from J&S on the

unresolved attorney's fees, as well as on the pending G. L. c. 93A claims.

In sum, the judge's findings and conclusions with respect to USF&G's violation of G. L. c. 176D, § 3 (9) (*f*) and (*g*), are fully warranted. The judge could rely on the violations of G. L. c. 176D, § 3 (9), as "persuasive evidence," as he termed it, that USF&G wilfully or knowingly engaged in unfair business practices proscribed by G. L. c. 93A. See, e.g., *Kiewit Constr. Co.* v. *Westchester Fire Ins. Co.*, 878 F. Supp. 298, 301-302 (D. Mass. 1995).

As to USF&G's third argument on liability — that there was no other independent evidentiary basis for G. L. c. 93A, § 11, liability — here, too, USF&G's record in the trial court before judgment is sparse, at best. In its closing argument, USF&G stated that "[t]here is no evidence that USF&G did anything or failed to do anything that could be considered a violation of 93A" and that "[J&S] simply can't sustain what is a heavy burden in an accusation of unfair and deceptive claim." Although USF&G does not rely here on these aspects of counsel's argument, we conclude that this was sufficient, albeit barely so, to preserve the issue for appellate review.

The evidence warranted the judge's ruling that the "totality of USF&G's postverdict conduct" was remediable under G. L. c. 93A, § 11. We have recognized that the "promotion of reasonable settlement offers is a prime goal" of G. L. c. 93A, § 11. *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 857 (1983). To that end, the statute provides a remedy of multiple damages where an insurer "forc[es] plaintiffs to litigate clearly valid claims." *Id.* As we have explained, J&S was forced to pursue its bond claim against USF&G and to initiate a G. L. c. 93A claim against USF&G in February, 1995, when USF&G failed to tender payment, or to make any reasonable settlement in favor of J&S following the jury verdict. The evidence also supported the judge's determination that J&S was compelled to press its claim because USF&G, in its answer to the amended complaint, made an "insincere response calculated solely to avoid the inevitable day of reckoning," and then extended a "monetarily inadequate" offer. The judge did not err in ruling that USF&G's postverdict conduct constituted "unfair and

deceptive acts and practices by USF&G in violation of G. L. c. 93A."

Finally, USF&G contends that, even if it did engage in unfair practices within the meaning of G. L. c. 93A, it did not do so knowingly or wilfully, and thus may not be subject to double damages. This argument was raised for the first time by USF&G in its posttrial motions.[14] It is waived. See *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Admin. & Fin.*, 369 Mass. 562, 565 (1976); *Milton* v. *Civil Serv. Comm'n*, 365 Mass. 368, 379 (1974).

We turn now to USF&G's appeal from the judge's denial of its posttrial motion to amend the liability judgment pursuant to rule 59 (e), or in the alternative to amend, clarify, and correct the judge's findings pursuant to rule 52 (b) and rule 60 (a).[15] A motion under rule 59 (e) and one under rule 60 (a) are addressed to the judge's discretion, and no abuse of discretion is demonstrated here. See *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Admin. & Fin.*, *supra*; *Piedra* v. *Mercy Hosp., Inc.*, 39 Mass. App. Ct. 184, 188 (1995). Assertions by counsel that there is no basis for liability is not an adequate record on which to rest a claim that a judge has abused his discretion.

Rule 52 (b) provides in pertinent part that "the court may amend its findings [of fact] or make additional findings and may amend the judgment accordingly."[16] It does not authorize challenges to or amendments to conclusions of law. USF&G argues here that it challenges only the judge's "legal conclu-

[14]While USF&G's counsel argued in his closing statement at the G. L. c. 93A trial that the liability was not reasonably clear throughout late 1994 and early 1995, and that the $230,000 settlement offer reflected that uncertainty, he made no argument concerning, nor any reference to, punitive damages or wilful or knowing in addressing J&S's claims under G. L. c. 93A and G. L. c. 176D. USF&G's counsel also failed to address that aspect of the claim at any other point prior to or at the G. L. c. 93A trial. We do not consider counsel's generalized arguments concerning liability made only during closing argument adequate to preserve the issue of wilfulness.

[15]In its March 1, 1999, motion, USF&G did not identify which portions of the motion were brought pursuant to which of each of the three procedural rules.

[16]Rule 52 (b) of the Massachusetts Rules of Civil Procedure, as amended, 423 Mass. 1402 (1996), provides that "[w]hen findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the

sions, not [his] factual findings." Because USF&G has not challenged the factual findings of the judge, we are not required to address whether the judge abused his discretion in denying relief under rule 52 (b). Were we inclined to do so, we would in any event conclude that no such abuse has been shown for the same reasons that we rejected USF&G's challenge to the underlying judgment.

3. *Damages.* We next consider USF&G's challenge to the measure of punitive damages awarded to J&S on its G. L. c. 93A claim. The judge ordered USF&G to pay double damages,[17] and he calculated those damages by doubling the amount of the judgment against USF&G on J&S's underlying bond claim, $410,245.83, and adding to that the sum of $25,161.76 in interest.

General Laws c. 93A, § 11, inserted by St. 1972, c. 614, § 2, sets forth the statutory basis for damages against USF&G. It provides in pertinent part that, if "the court finds for the petitioner, recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation of [G. L. c. 93A, § 2]." In 1989, the Legislature amended the statute to define the "actual damages" to be awarded if a defendant's conduct is wilful and knowing: The "amount of actual damages to be multiplied by the court shall be *the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence* regardless of the existence or nonexistence of insurance coverage available in payment of the claim" (emphasis added). St. 1989, c. 580, § 2.

We have interpreted the statute, before and after the 1989 amendment, to require a plaintiff who seeks damages under G. L. c. 93A to establish a causal link between the insurer's

___

party raising the question has made in the trial court an objection to such findings or has made a motion to amend them . . . ."

[17]The judge indicated that he did not award treble damages against USF&G, as permitted by the statute, because "USF&G's degree of culpability [did] not merit[] a judicial response in the full measure of firepower available under G. L. c. 93A."

wrongful conduct and the loss a plaintiff claims to have suffered. See *Kapp* v. *Arbella Mut. Ins. Co.*, 426 Mass. 683, 685-686 (1998), quoting *Yeagle* v. *Aetna Cas. & Sur. Co.*, 42 Mass. App. Ct. 650, 653-654 (1997).[18] J&S has met that burden and has established that it is entitled to G. L. c. 93A damages: The judge found, correctly, that USF&G's unreasonable settlement practices after the jury verdict on J&S's subcontract claim denied J&S prompt recovery of the sums owed to it under its subcontract and surety bond.[19]

That said, the question remains whether the judge applied the correct measure of damages. We conclude that he did. The 1989 amendment to the statute distinguishes between cases in which single damages are awarded, i.e., where the defendant's conduct is not wilful or knowing, and those in which multiple damages are awarded. See *Kapp* v. *Arbella Mut. Ins. Co.*, *supra* at 685, quoting *Yeagle* v. *Aetna Cas. & Sur. Co.*, *supra* at 653-654 (1989 amendment "goes on to say that in the particular situation where a claimant has recovered a judgment on the underlying claim, 'actual damages' shall be taken to be the amount of

---

[18]*Kapp* v. *Arbella Mut. Ins. Co.*, 426 Mass. 683 (1998), and *Yeagle* v. *Aetna Cas. & Sur. Co.*, 42 Mass. App. Ct. 650 (1997), interpreted the "actual damages" provision of G. L. c. 93A, § 9 (3). In 1989, the Legislature inserted the identical explanation of "actual damages" in that provision and in G. L. c. 93A, § 11. See St. 1989, c. 580.

[19]The judge explained in his memorandum of decision that he had limited J&S's G. L. c. 93A claims to USF&G's violations of the statute after the October 26, 1994, jury verdict because "to permit J&S to amend, *post*-verdict, in order to allege *pre*-verdict . . . violations by USF&G would be unfair" (emphasis in original). J&S has not challenged the judge's ruling limiting its claims to that time period, either in the trial court or on appeal. The claim against USF&G is therefore limited to USF&G's postverdict conduct. However, the judge made it clear that USF&G's preverdict conduct "might be relevant" to whether its postverdict conduct violated the statute. See note 3, *supra*. J&S appropriately introduced evidence of USF&G's preverdict misconduct at the trial on the G. L. c. 93A action, arguing that USF&G had failed to meet its obligations under G. L. c. 176D to investigate J&S's claim against Granger. USF&G introduced no evidence in response.

The judge stated in his memorandum of decision that, while the evidence of USF&G's preverdict conduct may be "pertinent to divining [USF&G's] corporate state of mind throughout the entirety of its dealings with J&S," he had relied solely on evidence of USF&G's postverdict misconduct in ruling that USF&G violated G. L. c. 93A.

the judgment for the purpose of bad faith multiplication [*and for that purpose only*]" [emphasis added]).[20]

As to multiple damages, the 1989 amendment also distinguishes between those cases in which a judgment has entered on the underlying claim and those in which no judgment has entered: if the amount of "actual damages" is to be doubled or trebled, and where there has been no judgment on an underlying claim, the "base damages are calculated according to the interest lost on the money wrongfully withheld by the insurer, compensating claimants for 'the costs and expenses directly resulting from the insurer's conduct.' " *Kapp* v. *Arbella Mut. Ins. Co.*, *supra* at 686, quoting *Clegg* v. *Butler*, 424 Mass. 413, 425 (1997). If, however, the defendant is subject to multiple damages and the plaintiff has recovered a judgment on the underlying claim, " 'actual damages' shall be taken to be the amount of the judgment for the purpose of bad faith multiplication." *Kapp* v. *Arbella Mut. Ins. Co.*, *supra* at 685, citing *Yeagle* v. *Aetna Cas. & Sur. Co.*, *supra.*

In this case, J&S recovered a judgment on its bond claim against USF&G (as well as its subcontract claim against Granger), and has proved that USF&G acted wilfully and knowingly in a manner prohibited by G. L. c. 93A, § 2, entitling it to multiple damages. By awarding to J&S double "the amount of the judgment" on its underlying surety bond claim, the judge did precisely what the language of the 1989 amendment requires.

While an award to J&S of $845,653.42 may appear excessive in light of the fact that USF&G's postverdict bad faith conduct caused J&S to lose only the use of the money to which it was entitled, the award is consistent with the legislative intent that led to the 1989 amendment. By amending G. L. c. 93A, §§ 9, 11, to include a specific definition of "actual damages to be

---

[20]The Appeals Court has noted correctly that, since its enactment in 1967, G. L. c. 93A "has maintained a line of distinction between violations that consist of unfair or deceptive acts or practices, simpliciter, and those that are knowing or wilful or actuated by bad faith. The former are sanctioned by compensatory 'single' damages. Damages for the latter more serious violations are avowedly punitive — and can be very heavily so when the [1989] amendment applies." *Yeagle* v. *Aetna Cas. & Sur. Co.*, 42 Mass. App. Ct. 650, 655 (1997).

multiplied," the Legislature responded directly to our ruling in *Bertassi* v. *Allstate Ins. Co.*, 402 Mass. 366, 372-373 (1988), and other cases in which Massachusetts courts had limited the measure of multiple damages against a bad faith insurer to the plaintiff's "loss of use damages, measured by the interest lost on the amount the insurer wrongfully failed to provide the claimant." *Kapp* v. *Arbella Mut. Ins. Co., supra* at 685-686, citing *Clegg* v. *Butler, supra* at 424, and *Yeagle* v. *Aetna Cas. & Sur. Co., supra* at 655.[21] The Legislature directed that where, as here, a plaintiff obtains a judgment against an insurer subject to multiple damages because it acted in bad faith in denying reasonable settlement of the plaintiff's underlying claim, the defendant insurer "shall be" subject to "multiplication of the judgment secured by the plaintiff on the underlying claim, thereby risking exposure to punitive damages many times greater than multiplication of the lost use of money alone." *Kapp* v. *Arbella Mut. Ins. Co., supra* at 686. See *Yeagle* v. *Aetna Cas. & Sur. Co., supra* at 655 (statutory language threatens defendant with award "that might be many times over the interest factor, [that is] arbitrary in the sense that it exceeded the injury caused by the c. 93A violation, and [that] worked an in terrorem addition to what was already a punitive sanction"). See also *Clegg* v. *Butler, supra* at 425 ("multiple damages provided under c. 93A are punitive damages intended to penalize insurers who unreasonably and unfairly force claimants into litigation by wrongfully withholding insurance proceeds"), and cases cited.

The statutory mandate that a surety who engages in bad faith settlement practices must pay multiples of the amount of the underlying judgment against it fulfils the important public policy of encouraging the fair and efficient resolution of business

[21]The particular concern that led the Legislature to amend the statute is that the "interest basis" or "loss of use" calculation of damages was not sufficiently punitive where "the plaintiff had been obliged to try to the end an action on the underlying claim." *Yeagle* v. *Aetna Cas. & Sur. Co., supra* at 655. See *Greelish* v. *Drew*, 35 Mass. App. Ct. 541, 542 n.3 (1993) (1989 amendment was "designed to overrule . . . *Bertassi* v. *Allstate Ins. Co.*, 402 Mass. 366 [1988] . . . and to clarify that the actual damages to be doubled and tripled were not just lost interest . . . but also included the amount of the underlying judgment that a plaintiff was forced to litigate to recover").

disputes. See *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 857 (1983) ("prime goal" of G. L. c. 93A, § 11, is to encourage reasonable settlement offers). As evidenced by this case, protracted litigation is almost certain to follow where a surety fails to pay, or to make reasonable efforts to settle, an indisputably valid claim under a surety bond. The specter of a punitive sanction many times the loss directly caused by the surety's bad faith settlement practices provides an important disincentive to sureties who would force a claimant into litigation to recover monies to which it is clearly entitled.

As to USF&G's contention that the interest and attorney's fees components of the judgment on the underlying bond claim should not have been included in the amount of damages subject to multiplication, the judge was correct to include both components. These were part of the judgment entered against USF&G, and they were part of what USF&G owed under the bond and the statute governing claims on such bonds. It would be contrary to the language of the statute, as well as to the punitive purpose of the 1989 amendment, to reduce the "amount of the judgment" (in the language of the statute) to exclude these components. See *Cohen* v. *Liberty Mut. Ins. Co.*, 41 Mass. App. Ct. 748, 756 (1996) (where interest is component of underlying judgment, "actual damages" to be multiplied include both base recovery and interest).[22]

We also reject USF&G's argument that the damages awarded under G. L. c. 93A should have been reduced by $410,245.83, the amount that Granger paid in October, 1995, to satisfy the judgment on J&S's underlying claims. As USF&G concedes, the underlying contract and bond claims are separate and distinct from the G. L. c. 93A claim. To offer USF&G a "credit" for the amount paid by Granger to satisfy the underlying claims would

---

[22]USF&G's reliance on *Patry* v. *Liberty Mobilehome Sales, Inc.*, 394 Mass. 270 (1985), and *McEvoy Travel Bur., Inc.* v. *Norton Co.*, 408 Mass. 704 (1990), is misplaced. In *Patry*, attorney's fees were not included in a judgment and we had little difficulty in that case deciding that "[a]ttorney's fees are not part of the damages suffered in a G. L. c. 93A action." *Id.* at 272. Similarly, in *McEvoy* interest charges were not included in any judgment and we addressed only the calculation of prejudgment interest pursuant to G. L. c. 93A and the interest statute at issue in that case, G. L. c. 231, § 6B. *Id.* at 716-717.

contravene the Legislature's intent to impose a stiff penalty under G. L. c. 93A on defendants who knowingly or wilfully fail to settle claims where liability on an underlying claim is clear. See *International Fid. Ins. Co.* v. *Wilson, supra* at 856; *Saud* v. *Fast Forward, Inc.*, 43 Mass. App. Ct. 207, 208-209 (1997).

4. *Attorney's fees.* We turn last to USF&G's challenge to the attorney's fees and costs awarded to J&S on its G. L. c. 93A claim. J&S submitted a claim for $120,631.52 and the judge ordered that judgment be entered in that amount. USF&G contends that the judge's award was "facially unreasonable"; that the judge abused his discretion by making the award without first holding a hearing and by failing to make "concrete findings"; and that the judge abused his discretion by rejecting its motion for a new trial or, in the alternative, a rehearing on the issue.

We do not address the merits of USF&G's contention that the award was "facially unreasonable," as it has waived its appellate right to contest the award, for the following reasons. On March 10, 1999, J&S filed its application for attorney's fees and costs expended in pursuit of its G. L. c. 93A claim against USF&G, in an amount of $78,547.95. It also reserved its right to supplement the application based on ongoing work on the claim. The application, served on USF&G, was accompanied by numerous detailed statements. USF&G filed no response, and made no challenge to the application.

On March 30, 1999, the judge forwarded to counsel a proposed order, which stated that J&S would receive "reasonable attorney's fees," incurred by J&S in connection with the pursuit of the G. L. c. 93A claim. The proposed order did not specify the amount, and in an accompanying letter, the judge wrote that he "solicit[ed]" submissions as to the "mathematical computations" of attorney's fees, adding, "I suggest that your submissions be served no later than April 16, 1999 and filed no later than April 26, 1999." Lest his suggestion be lost on USF&G, the judge added the following postscript: "I have J&S'[s] Application for Assessment of Attorney's Fees *and now await a response from USF&G*" (emphasis added). USF&G never responded to the judge's pointed request.

On April 26, 1999, presumably in response to the judge's invitation, J&S revised its application, and submitted a new request for an award of $120,631.66 in attorney's fees and costs. It served that application on USF&G. Once again, USF&G did not file any response; it neither challenged the appropriateness nor the amount of the claim for attorney's fees. USF&G also did not ask to be heard on the issue. The judge therefore had before him *no* challenge by USF&G to J&S's application for attorney's fees.

On May 20, 1999, the judge entered an award of attorney's fees and costs in the amount sought by J&S, $120,631.52. Only then did USF&G act: it filed a motion to vacate the award. Its request for relief came too late.

USF&G argues that it did not respond to the judge's letter or to the application of J&S because it relied on the judgment and order dated January 22, 1999, in which the judge said that J&S's attorney's fees and costs "shall be determined upon the filing of the appropriate motion and a hearing thereon." USF&G claims that the judge's "about-face" on the need for a hearing constituted an abuse of discretion because USF&G was led to believe it would have an opportunity to challenge J&S's "extraordinary fee request." The claim has no merit. Confronted by absolute silence from USF&G, the judge reasonably could have concluded that USF&G had no basis to challenge the amounts claimed by J&S, and that no hearing was therefore required. The January, 1999, order does not, in any event, provide for an evidentiary hearing. The judge later invited USF&G to articulate its theory (and amount) of reasonable attorney's fees. It never did so. When USF&G failed to challenge or brief the issue, the judge was fully warranted in concluding that USF&G did not intend to raise any challenge.

We also reject USF&G's contention that the judge abused his discretion by denying USF&G's motion for a new trial, or in the alternative, a rehearing, on the attorney's fees issue. The judge noted that USF&G had "elected not to address the question" when invited to do so. The judge's award was based on a review of the unchallenged affidavits and documentation submitted by counsel for J&S. He was not required to be both judge

and advocate for USF&G. There was no abuse of discretion.

The judgment of the Superior Court is affirmed.

*So ordered.*