Davis, Brian A., J.
On April 8, 2014, this Court issued its Findings of Facts, Rulings of Law and Order for Judgment in this M.G.L.c. 176D and 93A action (the “April 8 Order”) following a non-jury trial in September 2013. Familiarity with that Order is presumed. Judgment consistent with the April 8 Order entered in favor of the Plaintiffs on April 11, 2014. The parties thereafter filed various motions and petitions seeking to alter or amend the Court’s findings, rulings and judgment, and requesting an award of attorneys fees and costs to the Plaintiffs as the prevailing parties. The Court conducted a hearing on the parties’ respective postjudgment motions and the Plaintiffs’ petition for fees and costs on May 22, 2014. The following constitutes the Court’s memorandum of decision on the matters addressed at that hearing.
1. The Parties’ Motions to Amend or Alter the Judgment
Both the Plaintiffs and the Defendants have filed motions, pursuant to Mass.R.Civ.P. 59(e), seeking to modify the judgment set forth in the Court’s April 8 Order on the grounds that the Court misapprehended or miscalculated the amount of damages to be awarded under M.G.L.c. 93A, §9.[3] Specifically, the Plaintiffs assert that the amount of damages previously awarded by the Court (i.e., two times the amount of the judgments obtained by the Plaintiffs in their underlying Superior Court tort action) should be increased because the Court expressed its intention in the April 8 Order to impose the “maximum available sanction,” which the Plaintiffs assert is, in fact, three times the amount of the judgments rendered in the underlying tort action. Plaintiffs’ Motion to Alter and Amend the Judgment to Correct the Calculation of the Award under G.L.c. 93A, dated April 18, 2014 (“Plaintiffs’ Motion to Amend the Judgment”), pp. 2-4.
Defendants, conversely, argue that the damages awarded by the Court should be reduced because the judgment amounts used by the Court in calculating the Plaintiffs’ awards improperly include statutory post-judgment interest on those awards from the date on which they first were entered in 2003 until they finally were paid by Defendant AIGTS in 2007 and 2008.[4] Defendants’ Motion to Amend or Alter the Judgment to Correct the Calculation of the Award Under G.L.c. 93A, dated April 15, 2014 (“Defendants’ Motion to Amend the Judgment”), pp. 1-4. The Court will address each of the parties’ various motions in turn.
A. Plaintiffs’ Motion to Increase the M.G.L.c. 93A Multiplier from Two to Three
Plaintiffs argue that the Court erred when it concluded that the “maximum available sanction” it can impose upon the Defendants under M.G.L.c. 93A, §9(3), is two times, rather than three times, the amount of the underlying judgments previously entered in favor of the Plaintiffs. After further review of the relevant case law, the Court agrees.[5]
In a typical Chapter 93A action where the facts supporting the plaintiffs claim for unfair or deceptive *281 acts or practices are the same facts that support the plaintiffs tort or breach of contract claims, punitive damages are limited to two to three times a plaintiff s actual or single damages resulting from the harm suffered. See, e.g., Cherick Distribs., Inc. v. Polar Corp., 41 Mass.App.Ct. 125, 128-30 (1996) (Plaintiffs actual damages are those “derived from all claims arising out of the same and underlying transaction,” which amount may be doubled or trebled for a willful or knowing violation of Chapter 93A). It is this standard measure of damages that the Court applied in its April 8 Order.
Chapter 93A damages are calculated differently, however, when the unfair or deceptive acts or practices at issue constitute independent violations of M.G.L.c. 176D. Two Supreme Judicial Court decisions, R.W. Granger & Sons v. J&S Insulation, Inc., 435 Mass. 66, 84-85 (2001), and Rhodes v. AIGDomestic Claims, Inc., 461 Mass. 486, 499 (2012), hold, in combination, that a plaintiffs “actual damages” in such circumstances “shall be taken to be the amount of the judgment for the purpose of bad faith multiplication,” and that the plaintiffs damages are not to be reduced by the amount, if any, paid by the defendant to satisfy the judgment on the plaintiffs underlying claims. As explained by the SJC in Granger,
[t]o offer [the defendant insurer] a “credit” for the amount paid ... to satisfy the underlying claims would contravene the Legislature’s intent to impose a stiff penalty under G.L.c. 93A on defendants who knowingly or willfully fail to settle claims where liability on an underlying claim is clear.
435 Mass. at 85. Thus, contrary to the Court’s original, erroneous understanding, the maximum sanction that can be imposed on the Defendants in this case (or in any Chapter 93A case arising from a violation of Chapter 176D) is three times the amount of the judgments obtained by the Plaintiffs in the underlying tort action, irrespective of the fact that those judgments already have been satisfied. Id.
The question of whether Plaintiffs Odin Anderson, Kerstin Anderson and Katarina Anderson’s damage awards in this action are to be increased to three times the amount of the underlying judgments is easily answered. The Court previously ruled that this matter presents an “egregious case” deserving of the “maximum available sanction.” April 8 Order, p. 39. That holding is not hyperbole. It was, and remains, the Court’s intention to assess the largest possible monetary sanction against these Defendants in order to punish them for their prior conduct and to deter them, to the greatest extent possible, from engaging in similar conduct in the future. These goals are best achieved by increasing the amount of the Plaintiffs’ damage awards in this case to three times the amount of the underlying judgments.[6] Accordingly, the Plaintiffs’ Motion to Amend the Judgment to that end •will be allowed.
B. Defendants’ Motion to Reduce the “Amount of the Judgment.”
Defendants argue that the Court erred when it included the accrued postjudgment interest that AIGTS actually paid on the underlying judgments in calculating the Plaintiffs’ damage awards. Defendants’ Motion to Amend the Judgment, pp. 1-4. According to the Defendants, the “amount of the judgment” to be multiplied pursuant to M.G.L.c. 93A, §9(3), is the “judgment that was entered on the docket,” which “d[oes] not include the postjudgment interest.” Id., p. 3.
Defendants’ unduly restrictive view of the “amount of the judgment” to be multiplied in assessing damages under M.G.L.c. 93A, §9, for a violation of M.G.L.c. 176D, is incorrect. The amount of a monetary judgment obtained by a prevailing plaintiff in a Massachusetts court proceeding is not static. Massachusetts General Laws c. 235, §8, provides that “[e]very judgment for the payment of money shall bear interest from the day of its entry at the same rate per annum as provided for prejudgment interest in such award, report, verdict or finding.” See also Mass.R.Civ.P. 54(f) (“Every judgment for the payment of money shall bear interest up to the date of payment of said judgment”). The Supreme Judicial Court further has held that any accrued postjudgment interest effectively becomes part of the “principal” amount of the judgment, notwithstanding the fact that the amount of postjudgment interest may not be expressly stated in the judgment decree. Boyer v. Bowles, 316 Mass. 90, 95 (1944). As the SJC said in Boyer,
the meaning of the final decree is plain. Though not computed, the amount of [postjudgment] interest to be paid was certain, on the principle that whatever can be made certain by mere arithmetic is already certain. Substantially the decree is as though the interest had been computed and stated, and added to the principal.
Id. Thus, the “amount of the judgment” obtained by a prevailing plaintiff in Massachusetts, if left unpaid, can and does grow over time.[7]
Defendants disagree and cite Rhodes and R.W. Granger, supra, for the proposition that postjudgment interest does not constitute part of the judgment subject to multiplication. Defendants’ Motion to Amend the Judgment, p. 1. Neither of these cases, however, specifically discusses or analyzes the issue at hand. In both instances, the Supreme Judicial Court simply reiterated that a prevailing plaintiffs Chapter 93A damages are to be calculated by multiplying the “amount of the judgment,” •without specifying whether this amount includes postjudgment interest. Rhodes, 461 Mass, at 500-01; R.W. Granger, 435 Mass, at 80. The most direct and persuasive appellate guidance that this Court has identified is the SJC’s decision in Boyer, supra, which the Court will *282 follow in this case. Accordingly, the Defendants’ Motion to Amend the Judgment will be denied.
3. Defendants’ Motion to Amend the Findings of Fact
Defendants also have moved, pursuant to Mass.R.Civ.P. 52(b), to amend the findings of fact contained in the Court’s April 8 Order to incorporate certain additional findings that the Defendants contend are “undisputed” and “directly germane” to the Defendant’s defense in the underlying tort proceeding. Defendants’ Motion to Amend Findings of Fact, dated April 21, 2014 (“Defendants’ Motion to Amend Findings”), p. 1. All of the proposed findings presently urged by the Defendants previously were submitted to, but not adopted by, the Court.
The Court declines the Defendants’ invitation to supplement its findings of fact. As stated in the April 8 Order, the Court’s factual findings are based upon its “consideration of all the evidence presented at trial,” and the Court’s decision to adopt or reject various purportedly “undisputed” findings submitted by the parties reflects a conscious determination that those findings are not, in actuality, persuasive, credible or helpful. Nothing in the Defendants’ Motion to Amend Findings causes the Court to reconsider or change its prior thinking with respect to the Defendants’ additional proposed findings. Accordingly, the motion will be denied.
4. Plaintiffs’ Petition for Attorneys Fees and Costs
A. The Lodestar Method
General Laws c. 93A, §11, sixth para, mandates an award of reasonable attorneys fees to a party that prevails on a claim under M.G.L.c. 93A (“If the court finds in any action commenced hereunder, that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys fees and costs incurred in said action”). The standard method for determining reasonable attorneys fees in a Chapter 93A case is the “lodestar” method, which requires the court to determine the fair market rate for the legal services provided and multiply that rate by the number of hours reasonably spent on the case. Ross v. Continental Resources, 73 Mass.App.Ct. 497, 515 (2009). “After making its initial [lodestar] calculation, the court then may adjust the fee upward or downward based on other considerations, including the results obtained.” T&D Video, Inc. v. City of Revere, 66 Mass.App.Ct. 461, 477 (2006).
The determination of what constitutes “reasonable” attorneys fees in any given case is more art than science. In Linthicum v. Archambault, 379 Mass. 381 (1979), the Supreme Judicial Court identified various objective and subjective considerations that frequently are relevant, namely,
the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases.
Id. at 388-89. While Linthicum predates the widespread adoption of the lodestar method, the considerations that it describes still are applicable and useful. See Siegel v. Berkshire Life Ins. Co., 64 Mass.App.Ct. 698, 706 n.8 (2005) (“Under the lodestar method, other, formerly separate considerations . . . come into play indirectly” (citing Linthicum)). For example, “the complexity of the case is likely to be reflected in the judge’s finding as to the amount of time reasonably spent on the matter, and the ability and reputation of the attorney are likely to be reflected in the judge’s finding as to a reasonable hourly rate.” Id.
B. Application of the Lodestar Method to this Case
In this case, the Defendants do not dispute the total amount of time that Plaintiffs’ counsel reports spending on behalf of their clients over the life of the matter (approximately 2,838 hours from March 2001 through May 2014), or the total amount of costs requested ($85,148.08). The only issues to be resolved are the fair market rate for the legal services provided, and the question of whether an upward enhancement of the lodestar amount is warranted.
Plaintiffs request an average hourly rate of $600 for Richard E. Brody and Leonard H. Kesten, the lead attorneys on this case. Their requested rates for the other timekeepers who worked on the matter range from $200 to $500 per hour. In support of their fee petition and their proposed rates, the Plaintiffs proffer, among other things, the Affidavit of Michael Mone, Esquire, dated May 5, 2014 (“Mone Affidavit”). Attorney Mone, an experienced Boston litigator, opines that the fair market rate for Attorneys Brody and Kesten is between $500 and $700 per hour, with $600 representing the median rate for their services. Mone Affidavit, ¶11.
Defendants counter with the Affidavit of Attorney Robert A. Curley, Jr., dated May 20, 2014 (“Curley Affidavit”). Attorney Curley, another experienced Boston litigator, opines that the average fair market rate for Attorneys Brody and Kesten over the life of this case is $300 per hour. Curley Affidavit, ¶10. Attorney Curley further opines as to the average fair market rate for the associates ($75 to $200 per hour), paralegals ($50 to $125 per hour), and law clerks ($50 to $90 per hour) who labored on this matter for the benefit of the Plaintiffs. Id.
The truth, as often is the case, lies somewhere in the middle. Attorneys Brody and Kesten are highly-experienced and well-respected litigation attorneys who rendered excellent service to their clients in this mat *283 ter. They were skillful, resourceful and well-prepared. They also were unusually dogged and tenacious in the pursuit and vindication of their clients’ rights. The results they achieved at trial speak for themselves. The Court takes all of these factors (as well as the others described in Linthicuml into account in determining that $450 per hour over the more than 13-year life of this matter is the average fair market rate for the services of Attorneys Brody and Kesten. See Heller v. Silverbranch Constr. Corp., 376 Mass. 621, 629 (1978) (trial judge “can discern, from his own experience as a judge and expertise as a lawyer, the amount that the attorney should be paid”).
The rate adopted by the Court for Attorneys Brody and Kesten represents a twenty-five percent (25%) reduction in the average hourly rate requested by the Plaintiffs. The Court finds that a comparable reduction in the average hourly rates proposed for the Plaintiffs’ other time-keepers also is appropriate in order to make those rates consistent with fair market rates. The attorneys fees awarded to the Plaintiffs will be adjusted accordingly.
The Court declines to enhance the amount of attorneys fees awarded to the Plaintiffs based upon the results obtained where, as here, the complexity of the matter, the skill of the attorneys, and the level of success attained are adequately reflected in the billing rates that the Court has adopted. See, e.g., Evans v. Lorillard Tobacco Co., 2011 Mass.Super. LEXIS 293, at *16 n. 10, aff'd in part and vacated in part on other grounds, 465 Mass. 411 (2013) {‘This court has already incorporated such enhancement in the lodestar measurement itself where it has increased the usual hourly rates of [plaintiffs’ attorneys] to more accurately reflect their excellent skills and the broader market rate for attorneys of their caliber”).
Order
For the foregoing reasons, it is hereby ORDERED that:
Plaintiffs’ Motion to Alter and Amend the Judgment to Correct the Calculation of the Award under G.L.c. 93A (Docket No. 89.0) is ALLOWED, in part, in that judgment shall enter for the Plaintiffs against Defendants National Union Fire Insurance Company of Pittsburgh PA, American International Group Technical Services, Inc. and AIG Claims Services, Inc., jointly and severally, in the following revised amounts: $9,758,573.40 to Plaintiff Odin Anderson, $613,707.39 to Plaintiff Kerstin Anderson, and $613,707.39 to Plaintiff Katarina Anderson. Plaintiffs’ Motion to Amend the Judgment otherwise is DENIED;
Defendants’ Motion to Amend or Alter the Judgment to Correct the Calculation of the Award Under G.L.c. 93A (Docket No. 88.0) is DENIED;
Defendants’ Motion to Amend Findings of Fact (Docket No. 90.0) is DENIED; and,
Plaintiffs’ Petition for Fees and Costs (Docket No. 90.5) is ALLOWED in that the Plaintiffs further shall recover from the Defendants, jointly and severally, reasonable attorneys fees in the amount of $1,205,692.50, and costs in the amount of $85,148.08.

Mass.R.Civ.P. 59(e), which authorizes motions to “alter or amend a judgment,” is the appropriate mechanism to correct a miscalculation of damages resulting from a misinterpretation of the applicable law. See, e.g., Pentucket Manor Chronic Hosp., Inc. v. Rate Setting Comm’n, 394 Mass. 233, 235 (1985) (Rule 59(e) is “designed to correct judgments which are erroneous because they lack legal or factual justification”); Chiappetta v. Lyons, 1999 Mass.App.Div. 276, 278-80 (Mass.App.Div. 1999) (allowing motion to amend judgment to include mandatory treble damages on plaintiffs claim for unpaid wages pursuant to M.G.L.c. 149, §148). Whether to grant a motion filed under Rule 59(e) is a matter within the Court’s discretion. R.W. Granger & Sons v. J&S Insulation, 435 Mass. 66, 79 (2001).

The original amount of the judgment entered in favor of Plaintiff Odin Anderson in the underlying tort action in July 2003 (after a reduction based on the jury’s comparative negligence finding) was $1,569,330. By tire time Defendant AIGTS paid Mr. Anderson’s judgment in December 2008, the amount of the judgment, with statutory postjudgment interest, had grown to $3,252,857.80 The original amount of the judgments entered in favor of Plaintiffs Kerstin Anderson and Katarina Anderson in the underlying tort action was $110,000 each. By the time those judgments were paid by AIGTS in May 2007, the amount of each judgment, with statutory postjudgment interest, was $204,569.13.

It is noteworthy that the Defendants also agree with the Plaintiffs on this point, which makes this Court, embarrassingly, the last convert.

PlainÜffs also request an order directing each individual Defendant to pay the full amount of the Plaintiffs’ damage awards. Plaintiffs’ Motion to Amend the Judgment, pp. 4-5. This additional request is rej ected. Because AIGCS and AIGTS both served a single master, National Union, it is appropriate that damages be assessed against the Defendants jointly and severally as a group. See Rhodes, 461 Mass, at 487-88 n.4 (Where defendant AIG Domestic Claims, Inc. “handled all of the administration of the plaintiffs’ claims on behalf of the excess insurer National Union Fire Insurance Company of Pittsburgh, Pennsylvania . . . [b]oth [AIG Domestic Claims, Inc.] and National Union are liable for [AIG Domestic Claims, Inc.’s] violations” of Chapter 93A).

The Court finds unpersuasive the Defendants’ related argument, made at the motion hearing on May 22, 2014, that accrued postjudgment interest only would become a part of the “amount of the [Plaintiffs’] judgment” if a new judgment or execution expressly incorporating the accrued interest was issued by the Court. As stated by the SJC in Boyer, no supplemental decree was required because “the amount of [postjudgment] interest to be paid was certain, on the principle that whatever can be made certain by mere arithmetic is already certain.” 316 Mass, at 95.